PFAFF AMERICAN SALES CORP, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 91–03–00202

(Dated June 9, 1993)

*Grunfeld, Desiderio, Lebowitz & Silverman (Steven P. Florsheim* and *Robert Silverman),* of counsel, for plaintiff.
*Stuart M. Gerson,* Assistant Attorney General, *Joseph I. Liebman,* Attorney-In-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Bruce N. Stratvert)* for defendant.

## MEMORANDUM OPINION AND ORDER

GOLDBERG, *Judge:* Plaintiff challenges the United States Customs Service's ("Customs") tariff classification of Hobbylock sewing machines, model numbers 783, 784, 796, 797 and 603A with standard accessories, under the Harmonized Tariff Schedules of the United States ("HTSUS") subheading 8452.10.00 as "Sewing machines of the household type". (Emphasis added.) Plaintiff seeks judgment under 28 U.S.C. § 1581(a) (1988) sustaining its claimed classification of the sewing machines under HTSUS 8452.21.90 as **"Other sewing machines: Automatic unites: Other"**. (Emphasis added.) Plaintiff further contends that it is entitled, under 28 U.S.C. § 2644 (1988), to interest on excessive duties paid, calculated from the date of filing of the summons to the date of the actual refund. Defendant moves the court for judgment sustaining Customs' classification.

## BACKGROUND

Plaintiff, Pfaff American Sales Corporation ("Pfaff"), is the importer of record of the merchandise at issue which entered the United States between January 1989 and June 1990. The merchandise was classified upon liquidation by Customs under HTSUS subheading 8452.10.00 as "Sewing machines of the household type".

Plaintiff filed timely protests pursuant to 19 U.S.C. 1514(a) (1988) contesting Customs' classification. Customs subsequently denied the protests. After paying all liquidated duties, plaintiff timely commenced this action. On September 23, 1991, plaintiff's motion for test case designation was granted. Motions by plaintiff and defendant for summary judgment were denied on December 18, 1992 since there was a genuine issue of material fact in dispute. *Pfaff American Sales Corp. v. United States,* No. 92–226 (CIT Dec. 18, 1992). The case proceeded to trial on March 2, 1993.

In the case at bar, the parties agree that the merchandise properly classified under either HTSUS subheading 8452.10.00 as "Sewing machines of the household type" or HTSUS subheading 8452.21.90 as

"Other sewing machines: Automatic units: * * * Other". The HTSUS provisions in dispute are as follows:

8452 Sewing machines, other than book–sewing machines of heading 8440; furniture, bases and covers specially designed for sewing machines; sewing machine needles; parts thereof:

8452.10.00 Sewing machines of the household type ......
Valued not over $20 each.
Other ................................. 3.7%

8452.21 Other sewing machines:
Automatic units:

\* \* \* \* \* \* \*

8452.21.90 Other ................................. 2.5%

The Harmonized Commodity Description and Coding System Explanatory Notes (1986) ("Explanatory Notes") which are the Customs Cooperation Council's official interpretation of the Harmonized System, states in reference to subheading 8452.10:

Subheading 8452.10 applies only to the following sewing machines and sewing machine heads, all of which are capable of **at least lock-stitch operation:**
    (a) foot or hand powered machines;
    (b) machines incorporating an electric motor of an output not exceeding 120 watts:
    (c) machines for powered operation presented without a motor, the weight of the machine head not exceeding 16 kg.

The subheading does not, however, include sewing machines dedicated to a specific function such as button holing or filled bag closing.

Explanatory Note 8452.10 (emphasis added) (emphasis omitted).

Plaintiff claims that based upon the Explanatory Notes, lexicographic sources and expert witness evidence, only traditional home sewing machines that use a bobbin to produce a lockstitch in which two threads interlock in the material are classifiable as "Sewing machines of the household type". Therefore, since the subject sewing machines do not use a bobbin to produce a stitch where two threads interlock in the material, plaintiff is entitled to judgment as a matter of law. (Plaintiff's Pretrial Memorandum "Plaintiff's Memorandum" at 16.)

Defendant asserts that the controlling legal principle in this case is the common meaning of the tariff term "Sewing machines of the household type". In classifying the importations at issue as "Sewing machines of the household type" according to the common meaning of the term "household", Customs looked at the physical characteristics, capabilities and performance of the machines as well as the marketing, distributors, purchasers and uses of the product. (Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment incorporated by reference in Defendant's Pretrial Legal Memorandum "Defendants Memorandum" at 12–15.)

Defendant argues that the Explanatory Notes are not controlling legislative history. They are, however, instructive. Customs claims that the criteria listed by the Explanatory Notes for classification under 8452.10 are consistent with the criteria used by Customs in classifying the imported sewing machines as "Sewing machines of the household type". These included the threshold requirement that the machine must be capable of "at least lock-stitch operation".

Defendant claims that based upon lexicographic sources and expert witness evidence, the common meaning of the term "lock-stitch operation" does not require the use of a bobbin. Defendant's proposed definition of the term would therefore include not only traditional lockstitch machines using a bobbin as claimed by plaintiff, but also other types of sewing machines as well that produce a line of sewing in which at least two threads interlock. (Defendant's memorandum at 17.)

### The Trial Testimony

At trial on March 2, 1993, plaintiff presented the testimony of Mr. J. Jeffrey Bloemker. Mr. Bloemker, formerly employed as the Technical Manager of Pfaff, identified and described each of the machines involved in this case. He identified and explained the various stitches produced by each machine. Moreover, Mr. Bloemker explained the use of a traditional sewing machine.

Plaintiff also presented the testimony of Ms. Pati Palmer. Ms. Palmer is an educator, publisher and author of books in the home sewing field. Ms. Palmer explained the various features and capabilities of a serger, in comparison to the conventional home sewing machine. In addition, she described the distinction between the stitch produced by the traditional sewing machine and the stitch produced by the Hobbylock machine.

Finally, plaintiff presented the testimony of Mr. Henry A. Seesselberg. Mr. Seesselberg is currently the Director of Operations of the Advanced Apparel Manufacturing Technology Programs at the Fashion Institute of Technology. He has some 23 years experience with all types of industrial apparel manufacturing machinery, including sewing machines. He is the author of numerous technical articles in various sewn products industry publications, and holds ten patents in apparel and textile machine control.

Plaintiff's experts all concurred in the view that the common meaning of the tariff term "Sewing machines of the house hold type" includes only those sewing machines utilizing a bobbin to form a lockstitch. According to the testimony, the home sewing machine can, depending upon its sophistication, produce a variety of lockstitches, but at a minimum produces a straight lockstitch. All stitches produced by lockstitch machines have one common characteristic in that they require the use of a bobbin to lock the top (needle) thread with the bottom (bobbin) thread in the middle of the fabric being sewn.

In their testimony, the experts agreed that the Hobbylock sewing machine and the conventional lockstitch home sewing machine are com-

pletely different machines. With regard to the physical capabilities of the Hobbylock sewing machines, the experts agreed that the Pfaff Hobbylock sewing machines involved in this case are incapable of producing a lockstitch since they do not employ the use of a bobbin in stitch production. The stitches produced by the subject machines are wholly unlike—in appearance and function—the various forms of lockstitches produced by lockstitch sewing machines that employ the use of a bobbin. Furthermore, the use of the subject machines is not limited to home or domestic use. Neither the weight, the operating speeds, nor price of the subject machines requires that they be classified as of the household type, since a number of cottage industry and industrial type sewing machines have similar characteristics.

To the contrary, defendant presented the testimony of Professor Stephen A. Smith, Chairman of the Apparel Manufacturing Department at the Fashion Institute of Technology in New York City. Professor Smith's area of expertise is apparel manufacturing. Professor Smith's testimony was based on his examination of the sewing machines in issue, literature associated with those machines, and his own personal knowledge and experience in this field.

Professor Smith was of the opinion that the production of a lockstitch does not require the use of a bobbin. Rather the term "lockstitch" covers a variety of stitches where at least two threads interlock. According to Professor Smith, the imported sewing machines were of the household type because they were lightweight, multi-functional, and produced a form of lockstitch. He further stated that the machines were not designed for the high volume mass production of articles characteristic of industrial machines.

DISCUSSION

1. *Standard of Review:*

To determine whether the imported sewing machines were properly classified, the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative". *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873 (1984) *reh'g denied,* 2 Fed. Cir. (T) 97, 739 F.2d 628 (1984).

Pursuant to 28 U.S.C. § 2639(a)(1) (1988), the government's classification is presumed correct, and the burden of proof is upon the party challenging the classification. *Jarvis Clark* at 72.

The parties disagree both as to the correct meaning of the term "Sewing machines of the household type" and as to whether the imported sewing machine fits within the meaning of the term. The meaning of a tariff term is a question of law. *Digital Equip. Corp. v. United States,* 8 Fed. Cir. (T) 5, 889 F.2d 267, 268 (1989). The tariff term "Sewing machines of the household type" is not defined in the HTSUS and there is no legislative history to shed light on its correct meaning.

It is well settled customs law that when a tariff term is not defined in either the HTSUS or its legislative history, the correct meaning of a term in a tariff provision is the common meaning understood in trade or commerce. *Schott Optical Glass, Inc. v. United States,* 67 CCPA 32, 612 F.2d 1283 (1979). It is also well established that since the meaning of a customs term is a question of law, a court may rely upon its own understanding of terms used, and may consult standard lexicographic and scientific authorities, to determine their common meaning. *Trans-Atlantic Co. v. United States,* 60 CCPA 100, 471 F.2d 1397 (1973).

At the outset, the court notes that the parties agree that in order for a sewing machine to be "of the household type" it must comply with the criteria set out in Explanatory Note 8452.10. The criteria are that the machine 1) is foot or hand powered; 2) incorporates an electric motor of an output not exceeding 120 watts; 3) if presented without a motor, has a weight which does not exceed 16 kg.; 4) is not dedicated to a specific function. A "Sewing machine of the household type" must in every case be capable of at least a lock-stitch operation. (Plaintiff's Memorandum at 1 and 7–8 and Defendant's Memorandum at 15.) The parties, however, disagree as to the meaning of the term "lock-stitch operation".

The court first examines the relevance of the Explanatory Notes in determining the meaning of the term "lock-stitch operation". In so doing, the court recognizes that the Explanatory Notes do not constitute controlling legislative history. Rather, their purpose is to offer guidance in interpreting HTSUS subheadings. *Ugg Int'l, Inc. v. United States,* 17 CIT 79, 813 F. Supp. 848, 853 (1993); *Mita Copystar Corp. v. United States,* No. 93–76 (CIT May 20, 1993).

Upon examination, the court concludes that the Explanatory Note to HTSUS 8452.10 does not provide direction in defining the common meaning of the term "lock-stitch operation".

To assist the court in its determination, defendant introduced the Federal Standard for Stitches, Seams, and Stitchings (Fed. Std. No. 751a, as amended) ("Federal 751a") as the primary source for the identity and definition of sewing stitches. Federal 751a was adopted in 1965 as a federal nomenclature for government procurement. Stitch categories are divided into seven "classes". The seven classes are identified by the first digit of three digit numerals. Each class is divided into several types which are identified by the second and third digit. Each stitch is described through written definition and diagrammatic representation. According to testimony received at trial, the most recent published revision appeared in 1977. A copy of this publication was offered in evidence as Exhibit 21 by plaintiff.

Mr. Seesselberg, one of plaintiff's three witnesses, explained that the nomenclature set forth in Federal 751a has been adopted worldwide by sewing machine manufacturers, apparel manufacturers and governments. In support of his statement, he referred to the International Standard No. 4915 (International Organization for Standardization 1991) ("ISO"), offered in evidence by plaintiff as Exhibit 20. According

to the ISO, publication as an international standard requires approval by at least 75% of the member bodies of the International Organization-for Standardization casting a vote. The ISO is for use by purchasing officers, garment manufacturers, machine manufacturers, students and others, who require a reference book on this subject.

Mr. Seesselberg stated that the standard has adopted the nomenclature set forth in Federal 751a. According to Mr. Seesselberg, machine manufacturers most often identified stitches according to the number designation used in Federal 751a. Standard teaching materials also referred to the Federal 751a. *(See* plaintiff's Exhibit 10—Course outline, Fall, 1989, Fashion Institute of Technology. *See also* plaintiff's Exhibit 19—Copies of relevant pages from "The Sewing Machine—Its Invention and Development".)

Mr. Seesselberg also stated that the term "lock-stitch operation" is universally understood to refer to that class of stitch identified in class 300 and 700 of Federal 751a. Moreover, the term lockstitch would not be used to describe a stitch identified in one of the other five stitch classes set forth in the standard. Classes 300 and 700 denote a particular set of thread relationships whereby the top thread is made to form a loop through which the bottom thread supply is passed through each and every penetration of the sewing needle. All other stitch classes in the Federal 751a do not have the characteristic of the loop and the independent thread supply passing entirely through the loop. The independent thread supply is contained on a bobbin. On cross-examination, Mr. Seesselberg explained that he had never heard the Class 400 and 500 stitches referred to as lockstitches. He did not agree with the description associated with the Federal 751a Class 400 stitch as a "double-locked stitch". He had never heard industry people using such a description. He felt that Federal 751a was out of date on this point.

Mr. Seesselberg testified that the imported machines produced a Class 500 stitch.

In his testimony, defendant's witness Professor Smith, stated that to his knowledge, Federal 751a was not widely used except in the area of government procurement.

In Professor Smith's opinion, the term "lock-stitch operation" was very broad and included a variety of stitches where at least two threads interlocked. According to Professor Smith, the goal of Federal 751a was to eliminate any ambiguity that might exist as to specific stitch characteristics when using the term lockstitch. For this purpose, the nomenclature was based on a three digit numerical identification system and not on stitch names.

According to Professor Smith, the Class 300 and 700 type stitches were not synonymous with the term "lock-stitch operation". Other stitches within Classes 400 and 500 were also formed by interlocking threads. Both the Class 400 and 500 stitch types could be produced without the use of a bobbin. The class 300 stitch was differentiated from

Class 400 and 500 stitches by the fact that it was interlocked between the ply of the fabric.

Both defendant and plaintiff introduced various dictionary definitions to define the term "lockstitch". Defendant relied on *Fairchild's Dictionary of Textiles* 357 (6th ed.) which defines a lockstitch as "[a] line of sewing formed by locking of two threads together, as in the work done by most sewing machines" and *Funk & Wagnalls New International Dictionary of the English Language* 748 (Comprehensive ed. 1987) which defines a lockstitch as "[a] stitch made by two interlocking threads, as on some sewing machines". Professor Smith stated that these definitions supported his view that the term lockstitch included various types of stitches that form a line of sewing in which at least two threads interlock.

Plaintiff also introduced various dictionary definitions among these the *McGraw-Hill Encyclopedia of Science & Technology* vol. 16, 312 (1987) which under the term "sewing machine" describes the formation of a "lockstitch" by "ordinary two-threaded machines". The description refers to the formation of the lockstitch through the application of a "shuttle carrying *a bobbin of under thread* * * *." (Plaintiff's Memorandum at 17 (emphasis added), quoting *McGraw-Hill Encyclopedia of Science & Technology* vol. 16, 312 (1987).) To the same effect is the following description contained in the *Encyclopedia Americana* vol. 24, 634 (1988):

> A lockstitch machine uses an eyepointed needle with a thread supply, and a shuttle and *bobbin assembly* with another thread supply. The machine sews two or more pieces together with a lockstitch, which consists of two threads that interlock in the material * * *. Most home sewing machines are either straight lockstitch machines or zigzag lockstitch machines.

(Plaintiff's Memorandum at 19 (emphasis added), quoting *Encyclopedia Americana* vol. 24, 634 (1988).)

In evaluating the sources presented by the parties, the court first turns to Federal 751a and the ISO. These standards provide little direction to this court in defining the common meaning of the tariff term "lockstitch" because they do not contain an explicit definition of the term.

Similarly, the dictionary definitions quoted by defendant offer only limited assistance to the court since the descriptions are overly broad, and simply vague. They merely characterize a "lockstitch" as "a stitch made by two interlocking threads, as on some sewing machines." Such a definition renders the threshold requirement that the machine be capable of "at least a lock-stitch operation" almost meaningless. The definitions quoted by plaintiff offer greater guidance to the court since they offer a more precise definition of the term.

Finally, the court, as in all cases tried *de novo,* must determine which testimony it found most reliable and persuasive. In this case there was conflicting testimony regarding the meaning of the term "lock-stitch op-

eration". This court found the testimony of plaintiff's witnesses credible and convincing. It is noteworthy that all three of plaintiff's witnesses were highly experienced in the industry. Particularly, Mr. Seesselberg had in depth knowledge of the content and application of the federal and international stitch standards.

To the contrary, the single witness presented by the defendant, while experienced in the apparel manufacturing industry, lacked detailed knowledge of Federal 751a and the ISO and their usage. On cross-examination, Professor Smith thus admitted that although he was of the opinion that Federal 751a was not widely used outside the area of government procurement, he did not know whether industrial machine manufacturers actually referred to the Federal 751a categories in their catalogues. Moreover, Professor Smith testified that to his knowledge Federal 751a was the only stitch nomenclature that provided any uniformity in the apparel industry and that it was therefore used for education purposes and in reference works. This testimony contradicted Professor Smith's testimony that Federal 751a was not widely used. Professor Smith also stated that he was not familiar with the ISO.

The court finds and so holds that based on the Explanatory Notes, lexicographic authorities and expert testimony heard at trial, there is extensive consistent evidence showing that the common meaning of a "Sewing machine of the household type" is a machine that 1) is foot or hand powered; 2) incorporates an electric motor of an output not exceeding 120 watts; 3) if presented without a motor, has a weight which does not exceed 16 kg.; and 4) is not dedicated to a specific function. All of these machines must in addition be capable of at least a lock-stitch operation wherein a bobbin is used to form a sewing stitch and at least two threads interlock in the material.

With the common meaning of the tariff term "Sewing machine of the household type" so defined, the court turns to the more specific question, namely whether the imported sewing machines in fact are of "the household type".

The question of whether plaintiff's merchandise actually fits within the tariff term "Sewing machines of the household type" is question of fact. *E.M. Chemicals v. United States,* 9 Fed. Cir. (T) at 35, 920 F.2d 910, 912 (1990). Defendant concedes that the imported machines do not possess a bobbin. Therefore the imported machines were not correctly classified as sewing machines of the household type, but rather should have been classified under HTSUS 8452.21.90.

Plaintiff has requested this court to direct the defendant to pay interest on excessive duties paid, and that such interest be calculated, pursuant to 28 U.S.C. § 2644 (1988), from the date of the filing of the summons to the date of the actual refund. Under that provision, a plaintiff in any civil action in the U.S. Court of International Trade is allowed interest on any monetary relief obtained by a judgment.

558

## Conclusion

After examination of the imported merchandise, exhibits introduced at trial, relevant tariff provisions, Explanatory Notes and case law, and the testimony of record, it is the determination of the court that plaintiff has overcome the presumption of correctness that attaches to the government's classification and satisfied its burden of proof regarding its claimed classification. Therefore, Customs is directed to reliquidate the entries under, HTSUS 8452.21.90. Furthermore, it is directed that defendant pay interest on excessive duties paid, and that such interest be calculated, pursuant to 28 U.S.C. § 2644 (1988), from the date of the filing of the summons to the date of the actual refund.