GOODMAN MANUFACTURING,
L.P., Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 93–01–00029.
Slip Op. 94–106.

United States Court of
International Trade.

June 30, 1994.

Strasburger & Price, L.L.P., William M. Methenitis and Andrew G. Halpern, Dallas, TX, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen. of the U.S., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Carla Garcia–Benitez, Washington, DC (Karen P. Binder, Office of the Asst. Chief Counsel, U.S. Customs Service, of counsel), for defendant.

Collier, Shannon, Rill & Scott, Lauren R. Howard and Mary T. Staley, Washington, DC, for amicus curiae, American Iron and Steel Institute.

## OPINION

CARMAN, Judge:

Plaintiff commenced this action pursuant to 19 U.S.C. § 1515(a) (1988) to contest the denial of its protest against the United States Custom Service's (Customs) appraisement of steel that plaintiff had imported from Korea into its Houston, Texas plant. Goodman's Houston plant is designated as Foreign Trade Subzone (FTZ) number 84G. The Court has jurisdiction under 28 U.S.C. § 1581(a) (1988) and, for the reasons which follow, enters judgment for defendant.

### BACKGROUND

The merchandise at issue consists of three coils of cold rolled steel sheets, subject to a duty rate of 5.1%, for which plaintiff paid $25.70 per 100 pounds. Stipulation of Facts in Lieu of Trial (Stip.Facts) at 1. In total, plaintiff paid $4,848.24 for 28,109 pounds of steel, exclusive of international shipment and insurance costs. *Id.* Goodman entered the steel on May 12, 1992 to its FTZ number 84G in Houston as privileged foreign merchandise. *Id.* at 2. Plaintiff subsequently used all 28,109 pounds of steel in its production of central heating furnaces. From the 28,109 pounds of steel used in this production, 2,652 pounds resulted in steel scrap which was ultimately "properly entered and appraised based on transaction value at $81.68 upon its transfer from the subzone and entry into domestic commerce." *Id.*

Goodman entered the central heating furnaces it produced in the subzone at the Port of Houston, Texas on May 15, 1992 (Entry No. 601–0010100–9). Customs classified the privileged foreign steel incorporated into the finished furnaces under HTSUS 7209.23.0000 and assessed a duty rate of 5.1% *ad valorem*. *Id.* at 2–3. Goodman valued and entered this steel on the basis of transaction value which amounted to $4,767.00. Customs calculated the value of the steel by subtracting international freight and insurance ($2,151.66) and the sales price received from the scrap dealer who purchased the 2,652 pounds of steel scrap ($81.68) from the full price paid for all 28,109 pounds of steel admitted to the FTZ ($6,999.90). *Id.* at 3. Goodman paid duties of $243.12. *Id.*

Plaintiff filed a timely protest under 19 U.S.C. § 1514(a) (1988) to challenge Customs' valuation of the steel. On December 11, 1992, Customs denied the protest under 19 U.S.C. § 1515 and, after having paid all liquidated duties, plaintiff commenced this action pursuant to 28 U.S.C. § 1581(a). *Id.* at 4.

### CONTENTIONS OF THE PARTIES

Goodman argues the plain language of the Foreign Trade Zones Act (FTZA) and its legislative history supports plaintiff's position that "the proper method for valuation of the foreign privileged steel ... is transaction value, based on the actual price per pound paid for the steel multiplied by the amount of steel (by weight) actually entered into domestic commerce as part of a finished furnace." Plaintiff's Complaint at 2–3. In other words, plaintiff maintains it must only pay duty on the physical amount or *quantity* of steel that actually enters the U.S. According to plaintiff, the Court must not decide whether Customs has reasonably interpreted the statute, but rather must determine the cor-

rect interpretation of the statute. Moreover, because Goodman contends Customs' interpretation of the statutory waste provision is unreasonable, plaintiff argues the Court should not defer to Customs.

Defendant maintains it properly interpreted the FTZA when developing its valuation methodology. Customs' methodology is based on subtracting the *value* of the waste produced from the *value* of the privileged foreign merchandise used in the manufacturing process. The appropriate duty rate is then applied to this resultant value. According to Customs, 19 U.S.C. § 81c (1988) and its legislative history direct Customs to make an allowance for recoverable and irrecoverable waste, but do not state how Customs should calculate that allowance. Because Congress did not provide Customs specific guidance in making the calculation, Customs contends it was necessary for it to develop a method consistent with the statute. Customs maintains its interpretation of § 81c is reasonable and consistent with its past practice, and that the Court should, therefore, defer to Customs' interpretation.

*Amicus* recognizes the statute, legislative history and relevant regulations indicate Customs must make an allowance for recoverable waste when calculating the dutiable value of merchandise entering U.S. customs territory. *Amicus,* however, claims Congress gave Customs the discretion to establish a method for determining the duty to be paid and for calculating the amount of allowance for the waste. Because *Amicus* argues Customs' methodology is consistent with the statute, regulations, purpose of the FTZA and Customs' longstanding practice, it requests the Court uphold Customs' interpretation of the law. According to *amicus,* to hold otherwise would allow plaintiff to misuse the FTZA and cause injury to domestic manufacturers.

### Standard of Review

■ As in all "[c]ivil actions contesting the denial of a protest under section 515 of the Tariff Act of 1930," the Court reviews the record in this case *de novo. See* 28 U.S.C.

§ 2639(a)(1) (1988). Customs' appraisement decisions carry a presumption of correctness and "[t]he burden of proving otherwise ... rest[s] upon the party challenging such decision." *Id.; see Moss Mfg. Co. v. United States,* 13 CIT 420, 424, 714 F.Supp. 1223, 1227 (1989), *aff'd,* 8 Fed. Cir. (T) 40, 896 F.2d 535 (1990).

### Discussion

■ This case is before the Court on cross-motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). "The Court will deny summary judgment if the parties present a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." *Ugg Int'l, Inc. v. United States,* 17 CIT ——, ——, 813 F.Supp. 848, 852 (1993) (quotation and citation omitted). This case does not present any genuine issue of material fact. The issue that remains only involves the proper construction of 19 U.S.C. § 81c(a). Because this issue pertains solely to matters of statutory interpretation, the Court concludes the parties' conflict raises a question of law which the Court may properly resolve by summary judgment.

■ The question of law before the Court is how the allowance for waste provision in § 81c should be applied in determining the appropriate dutiable value of privileged foreign merchandise entering U.S. customs territory as part of a finished product. Contrary to defendant's assertions, the issue before the Court is *not* whether Customs reasonably interpreted the statute. Although Customs' decisions enjoy a presumption of correctness,[1] the Court's role in reviewing Customs cases *de novo* is to find the correct result. *See Semperit Indus. Prods., Inc. v. United States,* 18 CIT ——, ——, Slip Op. 94-100 at 15–18, —— F.Supp. ——, —— (June 14, 1994). The Court determines the

---

1. 28 U.S.C. § 2639(a)(1).

correct result in valuation cases, as it does in customs classification cases, in order to achieve fair results and provide "uniform and consistent interpretation and application of the customs laws[.]" *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 73, 733 F.2d 873, 876, *reh'g denied,* 2 Fed.Cir. (T) 97, 739 F.2d 628 (Fed.Cir.1984) (quotations and citation omitted). However, because plaintiff has failed to overcome the presumption of correctness, the Court finds for defendant.

Congress authorized the Foreign–Trade Zones Board "to grant to public and private corporations the privilege of establishing, operating, and maintaining [FTZs] for the purpose of expediting and encouraging foreign commerce." S.REP. No. 1107, 81st Cong., 2d Sess. —— (1949), *reprinted in* 1950 U.S.C.C.S. 2533, 2533–34; *see also* 19 U.S.C. § 81b(a) (1988). A FTZ "is an isolated, fenced off, and policed area within or adjacent to a port of entry." S.REP. No. 1107 at 2533, *reprinted in* 1950 U.S.C.C.S. at 2533. A FTZ allows foreign merchandise to "be landed, stored, repacked, sorted, mixed or otherwise manipulated with a minimum of customs control and without customs bond." *Id.* Any such merchandise brought into customs territory, however, "is subject to all customs laws and regulations." *Id.* A subzone such as plaintiff's, "has all the characteristics of a zone except that it is an area separate from an existing zone" and "can only be created when a company cannot be accommodated within the zone." *Conoco, Inc. v. U.S. Foreign–Trade Zones Bd.,* 12 Fed.Cir. (T), ——, ——, 18 F.3d 1581, 1582 n. 3 (1994) (citation omitted).

The treatment and appraisal of foreign merchandise entered into U.S. customs territory from a FTZ is provided for in § 81c. This statute, in relevant part, reads as follows:

Foreign and domestic merchandise of every description, except such as is prohibited by law, may, without being subject to the customs laws of the United States, except as otherwise provided in this chapter, be brought into a zone and may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured except as otherwise provided in this chapter, and be exported, destroyed, or sent into customs territory of the United States therefrom, in the original package or otherwise; but when foreign merchandise is so sent from a zone into customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise: *Provided,* That whenever the privilege shall be requested and there has been no manipulation or manufacture effecting a change in tariff classification, the appropriate customs officer shall take under supervision any lot or part of a lot of foreign merchandise in a zone, cause it to be appraised and taxes determined and duties liquidated thereon. Merchandise so taken under supervision may be stored, manipulated, or manufactured under the supervision and regulations prescribed by the Secretary of the Treasury, and whether mixed or manufactured with domestic merchandise or not may, under regulations prescribed by the Secretary of the Treasury, be exported or destroyed, or may be sent into customs territory upon the payment of such liquidated duties and determined taxes thereon. If merchandise so taken under supervision has been manipulated or manufactured, such duties and taxes shall be payable on the quantity of such foreign merchandise used in the manipulation or manufacture of the entered article. Allowance shall be made for recoverable and irrecoverable waste; and if recoverable waste is sent into customs territory, it shall be dutiable and taxable in its condition and quantity and at its weight at the time of entry. . . .

19 U.S.C. § 81c(a).

Pursuant to § 81c and Customs' regulations, the Department appraises articles transferred from a FTZ to U.S. customs territory which contain privileged foreign merchandise. *See* 19 C.F.R. § 146.65(a)(1) (1992). Customs' regulations provide that dutiable value of such privileged merchandise shall be based on the price actually paid for the merchandise in the transaction that

caused the merchandise to be admitted into the FTZ, less international shipment and insurance costs and U.S. inland freight costs. *Id.* §§ 146.65(b)(2), 152.103(a). In calculating the dutiable value of the merchandise, § 81c requires Customs to make a deduction for the recoverable waste generated as a result of the processing in the FTZ. *See also id.* § 146.65(b)(2). Customs classifies and appraises the recovered waste based on its character and condition at the time of entry into the customs territory. *See* 19 U.S.C. § 81c(a); 19 C.F.R. § 146.42(b) (1992). Plaintiff does not dispute Customs' treatment of the waste and stipulates Customs "properly entered and appraised [this non-privileged foreign merchandise] based on transaction value at $81.68 upon its transfer from the subzone and entry into domestic commerce." Stip. Facts at 2. Additionally, because none of the limitations listed in 19 C.F.R. § 152.-103(j) is present, plaintiff does not dispute transaction value is the proper valuation method for the foreign privileged steel contained in the finished furnaces. *Id.* at 3.

Goodman maintains the plain language of § 81c supports its argument. Specifically, plaintiff points to the following two sentences:

> If merchandise so taken under supervision has been manipulated or manufactured, such duties and taxes shall be payable on *the quantity of such foreign merchandise* used in the manipulation or manufacture of the entered article. *Allowance shall be made for recoverable and irrecoverable waste;* and if recoverable waste is sent into customs territory, it shall be dutiable and taxable in its condition and quantity and at its weight at the time of entry.

19 U.S.C. § 81c(a) (emphasis added). The first clause of the second sentence requires Customs to make an allowance for recoverable and irrecoverable waste. Goodman contends this allowance must be made to "the *quantity* of such foreign merchandise used in the manipulation or manufacture of the entered article." *Id.* (emphasis added). According to plaintiff, the fact the first phrase of the second sentence relates back to the first sentence mandates an adjustment to quantity. Based on Goodman's reading of

the statute, therefore, Customs should have reduced the amount of the dutiable steel by the number of pounds of steel waste. Goodman's valuation method results in an appraised value of $4,390.82 and duty of $223.93. Goodman's suggested calculation provides the following:

| | |
|---|---|
| Transaction value of 28,109 pounds of privileged foreign steel (28,109 lbs. × $.17248 per lb.) | $4,848.24 |
| Less: value of 2,652 pounds or privileged steel generated as steel waste or scrap (2,652 lbs. × $.17248 per lb.) | 457.42 |
| | $4,390.82 |
| Multiply by duty rate (5.1%) | × .051 |
| Duty paid for steel used in furnaces brought into U.S. customs territory | $ 223.93 |

Customs argues neither § 81c nor its legislative history provides the Court with guidance in resolving the issue in this case. According to Customs, § 81c and its legislative history merely indicate an allowance should be made for recoverable waste, but do not establish how Customs must calculate such an allowance. Similarly, Customs maintains § 81c does not instruct it how the waste allowance should affect the amount of duties payable when manufactured goods containing privileged foreign merchandise are transferred from a FTZ to customs territory. Because Customs received no guidance from Congress, Customs claims it attempted to construe the statute strictly.

Customs based its calculation on the transaction value of the quantity of steel used in the manufacturing process pursuant to the language of § 81c(a). This provision indicates, "[i]f merchandise so taken under supervision has been manipulated or manufactured, such duties and taxes shall be payable on the quantity of such foreign merchandise *used in the manipulation or manufacture of the entered article.*" 19 U.S.C. § 81c(a) (emphasis added). Because Goodman used all of the 28,109 pounds of steel in the manufacture of the furnace cabinets, Commerce based it calculation on the value of that amount of steel. *See* FTZ Activity Schedule, Exhibit C to Plaintiff's Motion for Summary Judgment ("*All* Lot # 001 steel was used to produce 21 inch furnace cabinets.... The 21 inch furnace cabinets were *all* used in the manufacture of 874 finished central heating furnace

units.... 2,652 pounds of scrap steel ... was generated during the manufacturing processes....") (emphasis added). Customs' calculation method is as follows:

| | |
|---|---:|
| Transaction value of the privileged foreign steel | $4,848.24 |
| Less: value of the steel waste or scrap | 81.68 |
| | 4,766.56 |
| Multiply by duty rate (5.1%) | × .051 |
| Duty paid for steel used in furnaces brought into U.S. customs territory | $ 243.10 |

Customs' valuation method produces an appraised value of $4,848.24 and duty of $ 243.10.

Contrary to plaintiff's assertions, the Court does not find § 81c to be clear and unambiguous. Moreover, the Court finds plaintiff's interpretation of § 81c meritless. As indicated above, this statute provides for the following in relevant part:

> If merchandise so taken under supervision has been manipulated or manufactured, such duties and taxes shall be payable on *the quantity of such foreign merchandise* used in the manipulation or manufacture of the entered article. *Allowance shall be made for recoverable and irrecoverable waste;* and if recoverable waste is sent into customs territory, it shall be dutiable and taxable in its condition and quantity and at its weight at the time of entry.

19 U.S.C. § 81c(a) (emphasis added). While this language instructs Customs to base its *initial valuation* on quantity, Congress did not instruct Customs to base the required *adjustment for waste* on quantity. Although Goodman maintains the phrase "quantity of such foreign merchandise" requires Customs to reduce the quantity of steel used in the manufacturing process by the quantity of steel resulting in waste, the Court fails to see the connection between this phrase and the subsequent sentence. In short, this Court holds plaintiff has failed to overcome the presumption of correctness that attaches to the valuation methodology adopted by Customs.

Furthermore, plaintiff's suggested methodology would also create problems in those instances where the measure of quantity of merchandise changes as a result of physical or chemical changes in the manufacturing process in the FTZ. If Customs were to use plaintiff's valuation methodology in such a situation, the dutiable value of the merchandise entering U.S. customs territory could not properly be calculated based on quantity. Customs' method on the other hand, bases its calculation on the transaction value of the amount used in the manufacturing process. This method avoids the potential problem of measuring quantity after physical or chemical changes have taken place. Plaintiff has not only failed to overcome the statutory presumption of correctness accorded Customs' decision, it has presented the Court a valuation methodology which could generate future application difficulties.

CONCLUSION

After considering all of plaintiff's, defendant's and *amicus curiae*'s arguments, the Court finds plaintiff has failed to overcome the presumption of correctness attached to Customs' valuation. Accordingly, the Court denies plaintiff's motion in all respects. Defendant's cross-motion for summary judgment is granted.