**UGG INTERNATIONAL, INC., Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**Court No. 91–01–00016.**

United States Court of
International Trade.

Feb. 4, 1993.

Grunfeld, Desiderio, Lebowitz & Silverman, Steven P. Florsheim, New York City, for plaintiff.

Stuart M. Gerson, Acting Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Mark S. Sochaczewsky, Stephen Berke, U.S. Customs Service, Washington, DC, of counsel, for defendant.

## OPINION AND JUDGMENT

CARMAN, Judge:

Plaintiff, Ugg International, Inc., challenges the classification and liquidation of its imported merchandise, Ugg brand boots, pursuant to section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515(a) (1988). This Court has jurisdiction under 28 U.S.C. § 1581(a) (1988) and, for the reasons which follow, grants plaintiff's motion for summary judgment in part and denies plaintiff's motion in part. The Court denies defendant's motion in all respects.

### I. BACKGROUND

#### A. *The Merchandise*

The merchandise at issue consists of Ugg brand boots. Plaintiff manufactures its boots from sheepskins which have been tanned with the wool on and applies soles made from rubber or plastics. The skin side of the sheepskin forms the boots' uppers and the wool side of the sheepskin faces the inside and lines the boots. Plaintiff imports its merchandise in various sizes to accommodate men, women and children.

#### B. *Relevant Statutory Provisions*

Plaintiff relies on the following provisions of the Harmonized Tariff Schedules of the United States (HTSUS):

| | | |
|---|---|---|
| 1. | 6403 (con.) | Footwear with outer soles of rubber, plastics, leather or composition leather and uppers of leather (con.): |
| | | Other footwear (con.): |
| | 6403.91 (con.) | Covering the ankle (con.): |
| | | Other: |
| | 6403.91.60 | For men, youths and boys . . . |
| | | . . . |
| | 6403.91.90 | For other persons . . . |

2.
CHAPTER 64

<u>Notes</u>

. . . .

4.    Subject to note 3 of this chapter:

    (a)    The material of the upper shall be taken to be the constituent material having the greatest external surface area, no account being taken of accessories or reinforcements such as ankle patches, edging, ornamentation, buckles, tabs, eyelet stays or similar attachments.

Defendant relies on the following HTSUS provisions:

1.    6405        Other footwear:

.

    6405.90      . . . .
                Other:

    6405.90.90    Other . . . . .

2.
CHAPTER 43

<u>Notes</u>
1.    Throughout the tariff schedule references to *"furskins*[,"] other than to raw furskins of heading 4301, apply to hides or skins of all animals which have been tanned or dressed with the hair on.  (Emphasis in original).

In addition, the following HTSUS provision is relevant:

2.
CHAPTER 64

<u>Additional U.S. Notes</u>
1.    For purposes of this chapter:

. . . .

    (b)    The term "footwear for men, youths and boys" covers footwear of American youths' size 11–½ and larger for males, and does not include footwear commonly worn by both sexes.  (Emphasis in original).

---

## C.  *Customs' Classification*

The United States Customs Service (Customs) classified the imported merchandise under HTSUS subheading 6405.90.90.  Subheading 6405.90.90 applies to "Other footwear: .... Other: .... Other: ...."  Pursuant to this subheading, Customs imposed duties totalling 12.5% *ad valorem.*

Plaintiff filed timely protests pursuant to 19 U.S.C. § 1514(a) (1988) contesting Customs' classification.  Customs subsequently denied the protests and, after having paid all liquidated duties, plaintiff commenced this action within the time allowed by law.  On December 18, 1991, this Court granted plaintiff's motion to designate this action a test case under USCIT R. 84(b).

II.  Contentions of the Parties

### A.  *Plaintiff*

Plaintiff advances four arguments supporting its motion for summary judgment. First, plaintiff relies on Chapter 64, Note 4(a) to assert that only the outer surface of the Ugg boots is relevant in determining whether the boots have leather uppers. Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment at 6 (Plaintiff's Brief).  Plaintiff contends the boots meet the requirements of subheadings 6403.91.60 and 6403.91.90 because the boots' external surface consists entirely of suede leather.

Second, plaintiff maintains even without Chapter 64, Note 4(a), ordinary commercial understanding demonstrates the boots have leather uppers.  Plaintiff's Response to Defendant's Reply to Plaintiff's Motion for Summary Judgment at 3–4 (Plaintiff's Reply Brief).  Plaintiff argues commercial understanding defines tariff terminology and because commerce recognizes the boots as having leather uppers, the boots have leather uppers for tariff purposes as well. *Id.*

Third, plaintiff contends the HTSUS "furskin" provisions do not apply to its merchandise. Plaintiff's Brief at 4, 7–8. Plaintiff urges the language used to define furskins in Chapter 43, Note 1 limits the application of the term "furskin" to instances where the term itself appears. *Id.* at 7. Therefore, because the term "furskin" does not appear in Chapter 64 or in any of the provisions in question, the term is inapplicable to its merchandise. *Id.*

Fourth, plaintiff asserts Customs improperly refused to classify the Ugg boots according to the gender of the person likely to wear the boots. Plaintiff's Brief at 9. Although plaintiff acknowledges its boots are unisex, plaintiff maintains only men wear men's size 8½ and larger and Customs should have classified boots in these sizes as men's footwear under subheading 6403.91.60. *Id.* at 9–10.

### B. *Defendant*

Defendant contends it is entitled to summary judgment for three principal reasons. First, defendant claims footwear with furskin uppers, such as sheepskin, is not properly classifiable as having leather uppers. Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 5 (Defendant's Brief). Although defendant concedes the sheepskin uppers at issue are commercially recognized as a form of leather, defendant maintains, for tariff purposes, the uppers can not be classified as leather. *Id.* at 5 n. 2. Instead, defendant argues that the uppers of the Ugg boots fall within the scope of the furskin definition set forth in Chapter 43, Note 1. *Id.* at 10. Defendant, however, offers no authority to support this assertion. According to defendant, because the HTSUS does not provide for footwear with furskin uppers, Customs properly classified plaintiff's merchandise under HTSUS subheading 6405.-90.90. *Id.*

Second, defendant claims Chapter 64, Note 4(a) does not apply to plaintiff's merchandise. Defendant's Reply Memorandum in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment at 2 (Defendant's Reply Brief). Defendant urges that the definition of uppers contained in Chapter 64, Note 4(a) only applies if the uppers at issue contain more than one material, but offers no authority to support this assertion. *Id.* Defendant asserts the uppers at issue in the instant case contain only one material—furskin—and consequently Chapter 64, Note 4(a) is inapplicable. *Id.*

Third, assuming the Court finds plaintiff's merchandise properly classifiable as leather rather than furskin, defendant contends it is improper to classify the boots according to the gender of the likely wearer. Defendant's Reply Brief at 4. Defendant asserts plaintiff has not demonstrated which sizes in the Ugg boots women commonly wear and therefore splitting the classification of the boots between HTSUS subheadings 6403.91.60 and 6403.91.90 is inappropriate. *Id.*

### III. DISCUSSION

#### A. *Presumption of Correctness*

■■■ As in all customs cases, a statutory presumption of correctness attaches to classifications by the Customs Service and the party challenging the classification has the burden of overcoming this presumption. 28 U.S.C. § 2639(a)(1) (1988). To determine whether an importer has overcome the statutory presumption, the Court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied*, 2 Fed.Cir. (T) 97, 739 F.2d 628 (1984). This statutory presumption of correctness governs all classification cases regardless of whether the Court conducts a trial or considers a motion for summary judgment.

#### B. *Summary Judgment*

■■■ This test case is before the Court on cross-motions for summary judgment. Under the rules of this Court, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). "The very mission of the summary judgment

procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." FED. R.CIV.P. 56(e) advisory committee note on the 1963 amendments. The Court will deny summary judgment if the parties present "a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." *Pfaff Am. Sales Corp. v. United States*, 16 CIT ——, Slip-Op. 92–226 at 5, 1992 WL 391085 (Dec. 18, 1992) (citations omitted). In assessing the parties' claims, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing summary judgment. *Id.* "The party opposing summary judgment may not rest on its pleadings, but must respond with specific facts showing the existence of a genuine issue for trial." *Id.* at 4–5 (citations omitted).

In addition, the Court may grant partial summary judgment. *See* USCIT R. 56(f) ("After considering a motion filed under [rule 56], the court may grant judgment in whole or in part in favor of any party."). Partial summary judgment is appropriate "when it appears that some aspects of a claim are not genuinely controvertible [and] ... genuine issues remain regarding the rest of the claim." FLEMING JAMES, JR. & GEOFFREY C. HAZARD, JR., CIVIL PROCEDURE § 5.19, at 273–74 (3d ed.1985) (footnotes omitted).

## C. *Issues*

The parties' pleadings, exhibits and supporting affidavits indicate this case presents two issues. These issues may be summarized as follows: (1) whether the Ugg boots have furskin uppers under HTSUS Chapter 43, Note 1;[1] and (2) whether women commonly wear men's sizes 8½ and larger.

---

1. Despite the fact defendant maintains the boots have furskin uppers for tariff purposes, defendant nevertheless concedes the boots are commercially understood to have leather uppers. Defendant's Brief at 5 n. 2.

### 1. *Whether the Ugg Boots Have Furskin Uppers*

■ The issue of whether the Ugg boots have furskin uppers does not present any genuine issue of material fact. Because this issue centers on the meaning of HTSUS Chapter 43, Note 1, the Court finds that it raises a question of law. *See Digital Equip. Corp. v. United States*, 889 F.2d 267, 268 (Fed.Cir.1989) (The meaning of a tariff term is a question of law.) (citation omitted).

■ The Court's next inquiry is whether plaintiff is entitled to judgment as a matter of law. Plaintiff is entitled to judgment as matter of law if it overcomes the statutory presumption of correctness attached to Customs' classification. *See* 28 U.S.C. § 2639(a)(1). To overcome this presumption, plaintiff must show the "furskins" definition contained in HTSUS Chapter 43, Note 1 does not apply to its merchandise. For the reasons which follow, the Court finds plaintiff has overcome the presumption of correctness and is entitled to judgment as a matter of law.

In implementing Chapter 43, Note 1, Congress appears to have relied on Chapter 43, Explanatory Note 1 drafted by the Customs Cooperation Council. These Notes are verbatim differing only with respect to the following terms: Chapter 43, Note 1 applies to the "tariff schedule" and the Chapter 43, Explanatory Note 1 applies to the "nomenclature."[1a]

The Explanatory Notes constitute the Customs Cooperation Council's official interpretation of the Harmonized system. They provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the system.

The Explanatory Notes were drafted subsequent to the preparation of the Harmonized System nomenclature itself, and will be modified from time to time by the CCC's Harmonized System Commit-

---

1a. The full text of Chapter 43, Note 1 provides: "Throughout the tariff schedule references to '*furskins*[,]' other than to raw furskins of heading 4301, apply to hides or skins of all animals which have been tanned or dressed with the

tee. *Although generally indicative of proper interpretation of the various provisions of the Convention, the Explanatory Notes, like other similar publications of the Council, are not legally binding on contracting parties to the Convention. Thus, while they should be consulted for guidance, the Explanatory Notes should not be treated as dispositive.* The Report of the Joint Committee on the Omnibus Trade and Competitiveness Act of 1988, H.Conf.R. No. 100–576, 100th Cong., 2d Sess. at 549 (emphasis added). The Joint Committee's Report makes .clear that although they are not controlling, the Explanatory Notes significantly clarify the reach of the HTSUS subheadings. *See Pfaff*, 16 CIT at ——, Slip–Op. 92–226 at 7. While the Notes do not represent Congress' interpretations of the HTSUS, Congress has endorsed the Notes as useful guides to understanding the HTSUS. In this case, the fact Congress adopted the essential terms of Chapter 43, Explanatory Note 1 in Chapter 43, Note 1 suggests Congress intended to adopt the Customs Cooperation Council's interpretation of the term "furskins" for the HTSUS.

The Court must assess the parties' claimed classifications in light of the language contained in Chapter 43, Note 1. This Note states the following: "Throughout the tariff schedule references to *'furskins'* other than to raw furskins of heading 4301, apply to hides or skins of all animals which have been tanned or dressed with the hair on." (Emphasis in original). Defendant asserts the Ugg boots have furskin uppers within the meaning of Chapter 43, Note 1 because the sheepskin forming the uppers was tanned with the hair on. Defendant further contends that because the boots have furskin uppers for tariff purposes,[2] Customs properly classified the

boots as having uppers made of material other than leather or textile materials under HTSUS subheading 6405.90.90.[3] The Court disagrees with defendant's position and finds Chapter 43, Note 1 does not apply to plaintiff's merchandise.

Defendant's interpretation would require the Court to apply Chapter 43, Note 1 in circumstances · where the Note's language bars its application. As plaintiff points out, the language used in Note 1 clearly limits the application of the term "furskin" to instances where the term itself appears. Plaintiff's Brief at 7. The Note's first clause, "[t]hroughout the tariff schedule references to 'furskins,'" establishes a condition for the Note's application; namely, a HTSUS provision must make "reference[ ] to 'furskins.'" Because Chapter 43, Note 1 requires HTSUS provisions to use the term "furskins" for the Note to apply, HTSUS provisions that do not use the term "furskin" do not trigger the Note's application. Consequently, because the term . "furskins" does not appear anywhere in Chapter 64's footwear provisions, the Court finds Chapter 43, Note 1 does not apply to the Ugg boots.

Even assuming Chapter 43, Note. 1 does apply in instances where the HTSUS does not. refer to "furskins," Chapter 64, Note 4(a) precludes a finding that the boots have furskin uppers. Note 4(a) describes the proper method of determining the content of footwear uppers when such a determination is necessary for classification purposes.[4] This Note provides the following: "Subject to note 3 of this chapter[,] .... [t]he material of the upper shall be taken to be the constituent material having the greatest *external surface area*, no account being taken of accessories or reinforcements such as ankle patches, edging, ornamentation, buckles, tabs, eyelet stays or similar attachments." (Emphasis added).

hair on." (Emphasis in original). Chapter 43, Explanatory Note 1 states the following: "Throughout the Nomenclature references to *'furskins*[,]' other than to raw furskins of heading No. 43.01, apply to hides or skins of all animals which have been tanned or dressed with the hair on." (Emphasis in original).

**2.** *See supra* note 1.

**3.** Subheading 6405.90.90 applies to "Other footwear: .... Other: .... Other...."

**4.** Contrary to defendant's assertion that Note 4(a) only applies if the uppers at issue contain more than one material, the Court finds no authority intimating such a limited application. *See* Defendant's Reply Memorandum in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Cross–Motion for. Summary Judgment at 2. Note 4(a) contains no language limiting the scope of its *own* application and defendant has not informed the Court of what it conceives to create such a restraint.

According to Note 4(a), only the external surface area of the upper is relevant in determining the upper's constituent material. The Ugg boots could have furskin uppers only if uppers were evaluated on the basis of both external *and* internal surface area. Only then would the wool (or hair) portion of the sheepskin be relevant to the evaluation of the boots' uppers. Because the furskin definition contained in Chapter 43, Note 1 does not apply and is inapposite to the analysis required by Chapter 64, Note 4(a), the Court finds the furskin definition inapplicable to plaintiff's merchandise.

■ The Court notes further that a fair reading of Chapter 43, Note 1 and Chapter 64, Note 4(a) indicates the latter is more specific to the merchandise at issue. The overall structure of the HTSUS demonstrates Chapter 64 applies to articles, such as plaintiff's, that have undergone significant manufacturing whereas Chapter 43 provides for articles that have been processed to a much lesser degree. As indicated by the Customs Cooperation Council,

> [a]s a general rule, goods are arranged in order of their degree of manufacture: raw materials, unworked products, semi-finished products, finished products. For example, live animals fall in Chapter 1, animal hides and skins in Chapter 41 and leather footwear in Chapter 64. The same progression also exists within the Chapters and headings.

Customs Co-operation Council, INTRODUCING THE INTERNATIONAL CONVENTION ON THE HARMONIZED COMMODITY DESCRIPTION AND CODING SYSTEM 32 (1987). In the instant case, the HTSUS structure and the language of the Notes at issue support an inference Chapter 64, Note 4(a) and Chapter 64 as a whole are more applicable to the Ugg boots because the boots themselves are a highly manufactured article. In other words, while Chapter 43, Note 1 applies to the general category of articles manufactured from furskins and artificial fur, Chapter 64, Note 4(a) specifically covers footwear— a highly processed class of merchandise. Because Note 4(a) is more specific to the merchandise at issue, this Court holds Note 4(a) is applicable.

■ The Court now turns to plaintiff's contention that the Ugg boots have leather uppers under HTSUS heading 6403. This heading applies to "[f]ootwear with outer soles of rubber, plastics, leather or composition leather and uppers of leather." As previously indicated, the content of the uppers is determined by "the constituent material having the greatest external surface area." HTSUS Chapter 64, Note 4(a). In light of heading 6403 and Note 4(a), the principal issue before the Court is whether the material with the greatest *external* surface area on the Ugg boots is leather. Because the exhibits received by the Court show the entire external surface area of the Ugg boots consists of what is ordinarily understood to be suede leather, the Court finds the Ugg boots have leather uppers and are properly classifiable under HTSUS heading 6403. The Court finds further that plaintiff has overcome the presumption of correctness attached to Customs' classification and that plaintiff is entitled to judgment as a matter of law that the boots are classifiable under HTSUS heading 6403. For the reasons discussed below, however, the Court finds that the remaining issue of boot size created by HTSUS subheadings 6403.91.60 and 6403.91.90 involves factual questions that the Court can not resolve on summary judgment.

### 2. Whether Women Commonly Wear Men's Sizes 8½ and Larger

■ The tariff provisions applicable to boots with leather uppers necessitate an inquiry as to what size boots women commonly wear. HTSUS subheading 6403.91.60 applies to "[f]ootwear with outer soles of rubber, plastics, leather or composition leather and uppers of leather:.... Other footwear: Covering the ankle: Other: *For men, youths and boys ....*" (Emphasis added). HTSUS subheading 6403.91.90 applies to "[f]ootwear with outer soles of rubber, plastics, leather or composition leather and uppers of leather:.... Other footwear: Covering the ankle: Other: *For other persons ....*" (Emphasis added). In addition, Chapter 64, Additional U.S. Note 1(b) states the following: "For purposes of this chapter[, t]he term *"footwear for men, youths and boys"* covers footwear of American youths size 11½ and

larger for males, and does not include footwear commonly worn by both sexes." (Emphasis in original). The foregoing tariff provisions indicate that the essential factor to consider while classifying boots with leather uppers under HTSUS subheading 6403.91.60 or 6403.91.90 is what size boots women commonly wear. In their papers, the parties have further refined the inquiry to the issue whether women commonly wear men's sizes 8½.

The question of what boot sizes women commonly wear presents a genuine issue of material fact incapable of resolution without trial. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." FED.R.CIV.P. 56(e) advisory committee note on the 1963 amendments. The Court finds that a "genuine need for trial" exists in this case because the proofs offered by the parties do not conclusively show what footwear sizes women commonly wear.[5]

The evidence before the Court precludes summary judgment for two reasons. First, the parties did not submit enough evidence to permit a meaningful inquiry as to what sizes women commonly wear. Only plaintiff offered evidence bearing on this issue. The evidence consists of an affidavit by Charles Kaiser, Jr., Chief Operating Officer of Ugg Holdings, Inc., the successor corporation of plaintiff Ugg International, Inc. *See* Kaiser Affidavit in support of Plaintiff's Reply Brief at 1–3 (Kaiser Affidavit).

The rules of this Court authorize the submission of supporting affidavits and permit judgment for the movant if the opponent does not respond with its own opposing affidavit.

When a motion for summary judgment is made and supported [by affidavit,] an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party.

USCIT R. 56(f) (emphasis added). In establishing the analogous rule under the Federal Rules of Civil Procedure, the Advisory Committee on the Federal Rules of Civil Procedure clarified the standard applicable to evidence submitted in support of a motion for summary judgment: "Where the evidentiary matter in support of the motion does not establish the *absence of a genuine issue*, summary judgment must be denied even if no opposing evidentiary matter is presented." FED.R.CIV.P. 56(e) advisory committee note on the 1963 amendments (emphasis added).

Plaintiff's supporting affidavit does not permit summary judgment because it does not demonstrate "the absence of a genuine issue" as to what footwear sizes women commonly wear. The crux of the Kaiser Affidavit is that women commonly wear men's sizes 9 and below, but do not commonly wear men's sizes 10 and above. Kaiser Affidavit ¶ 9. While this evidence is instructive, it is not persuasive enough to merit summary judgment. As indicated above, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing summary judgment. *Pfaff*, 16 CIT at ——, Slip-Op. 92–226 at 5. Accordingly, the Court finds the affidavit does not adequately "establish the absence of a genuine issue" as required by Rule 56(f) and that summary judgment is improper on the size issue.[6]

---

**5.** The proofs are inconclusive in regard to "youths sizes 11½ and larger" as contemplated by Note 1(b), as well as to men's sizes 8½ and above—the size inquiry urged by the parties.

**6.** In the alternative, plaintiff claims Customs consistently rules that men commonly wear footwear in men's sizes 8½ and larger. *See* Plaintiff's Reply Brief at 5–6 (citing Customs Ruling HQ 950439 (Feb. 19, 1992)); *see also* Plaintiff's Brief, Exhibit 3 (Customs Ruling HQ 061446 (Nov. 17, 1981)) (noting that women do

not commonly wear cross-country ski boots in men's sizes 8½ and above). While these Rulings are instructive, they are not binding on the courts. RUTH STURM, CUSTOMS LAW AND ADMINISTRATION, § .52.4, at 32 (3d ed. 1991) (citation omitted). In any event, the Court declines to apply the cited Rulings on this motion for summary judgment because they do not adequately "establish the absence of a genuine issue" as required by Rule 56(f).

856

## IV. CONCLUSION

This Court makes the following holdings: (1) plaintiff has overcome the presumption of correctness created by 28 U.S.C. § 2639(a)(1); (2) Customs incorrectly classified the merchandise at issue under HTSUS subheading 6405.90.90; (3) plaintiff is entitled to judgment as a matter of law that the Ugg boots have leather uppers and that the correct classification is under HTSUS heading 6403; (4) the Court shall conduct a trial to determine whether classification is proper under subheading 6403.91.60 or 640391.90; and (5) the parties' motions are denied in all other respects.