**WASHINGTON INTERNATIONAL INSURANCE CO., Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

**No. 93–1114.**

United States Court of Appeals, Federal Circuit.

May 16, 1994.

Edward M. Joffe, Sandler, Travis & Rosenberg, P.A., of Miami, Florida, argued for plaintiff-appellee. With him on the brief was Jeremy Ross Page.

John J. Mahon, Atty., Commercial Litigation Branch, Dept. of Justice, of New York City, argued for defendant-appellant. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office. Also on the brief was Edward N. Maurer, Office of Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, of counsel.

Before ARCHER, Chief Judge,* SMITH, Senior Circuit Judge, and MAYER, Circuit Judge.

MAYER, Circuit Judge.

The United States appeals the October 6, 1992, judgment of the Court of International Trade, No. 84-05-00660, holding that "Rhinohide," a waterproof roofing material, is correctly classifiable under item 771.43 of the Tariff Schedules of the United States (1981). We affirm.

*Background*

This case is about the proper classification of "Rhinohide," a waterproof roofing membrane, under the Tariff Schedules of the United States (TSUS) (1981). Rhinohide is a modified bitumen one-ply roofing membrane which is used to waterproof roofs. Analysis by Customs determined that by weight, Rhinohide is comprised of bitumen (85.5%), ethylene-propylene (9.1%), nonwoven polyester (3.2%), grit (2.0%), and polyethylene (0.2%). The nonwoven polyester is a fabric core which provides stability for the bitumen-ethylene-propylene combination which in turn imparts the waterproofing properties. Bitumen is an asphalt product which occurs naturally or may be derived from petroleum.

Rhinohide was initially entered into the United States under TSUS item 523.91 as an article of asphalt for roofing. However, Customs liquidated the entries under item 355.25 as non-woven fabrics, whether coated or filled, of man-made fibers. Respondent Washington International Insurance Company, surety on the bond to the entries at issue, which occurred between June and December of 1981, filed an unsuccessful protest. It then appealed to the Court of International Trade.

The court held that Rhinohide was properly classified under item 771.43 as "[f]ilm, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics...." It first found that bitumen met the definition of "synthetic plastics materials" for the pur-

poses of part 12, schedule 7 of the TSUS. The court next found that bitumen imparted the essential characteristic of Rhinohide—a waterproofing material—which was therefore "almost wholly of" plastics, 803 F.Supp. 420. The United States appeals.

*Discussion*

The issue is whether bitumen is considered a plastic for purposes of part 12, schedule 7 of the TSUS, and should be entered under item 771.43 which covers:

Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics (con.):

Not of cellulosic plastics materials:

Film, strips, and sheets, all the foregoing which are flexible:

. . . . .

Other ...

The headnote to part 12 of schedule 7 provides:

1. For the purposes of the tariff schedules—

(b) the term *"plastics"* refers to—

(i) synthetic plastics materials, as defined in parts 1C and 4A of schedule 4,

(ii) polyurethane,

(iii) natural resins,

(iv) protein substances, such as casein compounds,

(v) regenerated cellulose,

(vi) vulcanized fiber, and

(vii) reinforced or laminated plastics, as defined in subpart A of this part ....

The definition of "synthetic plastics materials" referred to in section 1.(b)(i) above provides:

2. The term *"synthetic plastics materials"*, in this subpart, embraces products formed by the condensation, polymerization, or copolymerization of organic chemicals and to which an antioxidant, color, dispersing agent, emulsifier, extender, filler, pesticide, plasticizer, or stabilizer may

* Circuit Judge Archer assumed the position of Chief Judge on March 18, 1994.

have been added. These products contain as an essential ingredient an organic substance of high molecular weight; are capable, at some stage during processing into finished articles, of being molded or shaped by flow; and are solid in the finished article. The term includes, but is not limited to, such products derived from esters of acrylic or methacrylic acid; vinyl acetate, vinyl chloride resins, polyvinyl alcohol, acetals, butyral, formal resins, polyvinyl ether and ester resins, and polyvinylidene chloride resins; urea and amino resins; polyethylene, polypropylene, and other polyalkene resins; siloxanes, silicones, and other organo-silicon resins; alkyd, acrylonitrile, allyl, and formaldehyde resins, and cellulosic plastics materials. These synthetic plastics materials may be in solid, semi-solid, or liquid condition such as flakes, powders, pellets, granules, solutions, emulsions, and other basic crude forms not further processed.

part 4A, schedule 4, TSUS.

The parties agree that a material must satisfy four requirements if it is technically to meet this definition. The material must: 1) be formed by condensation, polymerization or copolymerization; 2) contain an organic substance of high molecular weight; 3) be capable of molding or shaping by flow; and 4) be solid in its finished state. The government contends that the Court of International Trade's evaluation of the facts under this four part test was clearly erroneous. However, the government's challenges to the court's fact findings amount only to the assertion that the testimony of its witnesses should have been given more weight. Upon reviewing the record and the court's opinion, we conclude that its analysis of each of the four factors was thorough and its conclusion is sound.

■ The government next argues that even if bitumen technically meets the definition of "synthetic plastics materials" provided in parts 1C and 4A of schedule 4, as a matter of statutory construction and legislative history it cannot be considered a plastic for the purpose of the TSUS. This is a question of law which we review de novo.

The government first points out, and Washington International agrees, that bitumen imported alone would be classified under item 521.11 of schedule 5, which provides for "asphaltum, bitumen and limestone rock asphalt." The government in essence contends that if Congress intended bitumen to be considered a plastic for tariff purposes, it would not have created a separate item under schedule 5 for bitumen if imported alone. Despite the fact that bitumen literally fits the definition of "synthetic plastics materials" provided in schedule 4, the government argues that because Congress did not allow bitumen to be imported as a plastic if imported alone, it also did not intend for bitumen to be a plastic if imported as a component of a product such as Rhinohide.

We cannot accept this argument. The statute provides that if a substance meets the definition in part 4A of schedule 4, it is considered a plastic for purposes of schedule 7. While a more specific provision controls over a general one, see Hills Materials Co. v. Rice, 982 F.2d 514, 517 (Fed.Cir.1992), so that bitumen alone is covered under schedule 5 and not schedule 4, the government does not point to a more specific provision which provides for bitumen products. Notwithstanding that schedule 5's provision for the importation of bitumen alone supersedes its importation under schedule 4, we see no reason to infer a similar bar to the treatment of bitumen as a plastic when part of a product.

■ Likewise, the legislative history does not support such an inference. A product literally included in a tariff definition may nonetheless be excluded upon a showing of legislative intent, United States v. Andrew Fisher Cycle Co., 426 F.2d 1308, 1311 (CCPA 1970), but there must be "strong and sufficient indications that it was the intent of Congress" to exclude the product at issue, id.; see also General Methods Corp. v. United States, 458 F.2d 521, 523 (CCPA 1972) ("the basis for avoiding the literal interpretation of a provision must be clearly established"). Strong and sufficient indications are not present here.

The government points to part of the legislative history of the TSUS, which discusses

the definition of rubber and plastics for the purpose of schedule 7:

*Definition of rubber and plastics*

Headnotes to part 1 and part 4 of schedule 4 define the terms "synthetic plastics material" and "rubber". The provisions for these materials in schedule 4 are confined to basic crude forms. Headnote 1 to part 12 of this schedule defines the term "plastics" more broadly so as to include certain natural substances as well as the synthetic substances provided for in the chemical schedule. In addition, headnote 1 specifically names polyurethane, regenerated cellulose, and vulcanized fiber, to avoid any technical questions being raised as to their status as plastics. The definitions in headnote 1 of this part of the terms "rubber", "plastics", and "rubber or plastics" are concerned with their meaning as used in tariff provisions covering products made therefrom.

*Tariff Classification Study,* part 12, schedule 7, p. 447 (1960). Because this passage of the *Tariff Classification Study* states that materials such as polyurethane, regenerated cellulose and vulcanized fiber were included in the definition at part 12 of schedule 7 to avoid any technical question as to their status as plastics, and that that definition was broader than the definitions in the headnotes to part 1 and part 4 of schedule 4, the government says that the drafters of the TSUS intended that bitumen not be a plastic for tariff purposes. It appears to be arguing that bitumen must be excluded unless Congress specifically stated that bitumen should be included as a plastic under part 12, schedule 7.

This proposition is unacceptable. First, the fact that the *Tariff Classification Study* specifically included some items by name cannot be read to require the exclusion of unnamed items, especially where an item, such as bitumen, technically meets the definition of "synthetic plastics materials". Second, as Washington International points out, the passage can be read to suggest that Congress intended to encompass a wide range of products within the definition of plastics for schedule 7 purposes, and the named products were meant to illustrate the broad scope of the definition. We see nothing in the legislative history or the statute itself which prohibits the classification of bitumen as a plastic for the purpose of part 12, schedule 7, once it is shown to meet the literal definition of "synthetic plastics materials".

█ Finally, the government argues that even if bitumen is a plastic for schedule 7 purposes, Rhinohide is not "almost wholly of" plastics as required to come under item 771.-43. " '[A]lmost wholly of' means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present...." General Headnote 9(f)(iii), TSUS. Because we affirm the Court of International Trade's finding that bitumen is a plastic as defined by part 12, schedule 7, and the parties agree that ethylene-propylene is a plastic, the remaining question is whether the finding that these plastics impart the essential character of Rhinohide despite the presence of the polyester core is reversible.

The government's primary objection to this finding is based on *V.G. Nahrgang Co. v. United States,* 741 F.2d 1363 (Fed.Cir.1984). In that case, an importer of a one-ply roofing membrane comprised of bitumen and polypropylene and a nonwoven polyester core argued that the product should be classified under the same item at issue here. The Court of International Trade rejected that argument because the importer presented insufficient proof that bitumen was a plastic. *V.G. Nahrgang Co. v. United States,* 6 CIT 85, 1983 WL 2210, *reh'g denied,* 6 CIT 210, 1983 WL 2203 (1983). This court affirmed, agreeing that there was a lack of proof. The analysis of whether the roofing product was "almost wholly of plastics" was limited to determining whether the polypropylene alone imparted the essential character of the article. In the present case Washington International made out its case that bitumen is a plastic. *Nahrgang* is irrelevant. Washington International is not bound by another importer's failure, in a case to which it was not a party, to meet its evidentiary burden.

The government's remaining arguments concern the sufficiency of the evidence that

the bitumen and other plastics impart water-proofing properties which comprise the essential characteristic of the Rhinohide. We believe there was substantial evidence to support this conclusion, and the trial court's finding on this issue was not clearly erroneous.

### Conclusion

Accordingly, the judgment of the Court of International Trade is affirmed.

*AFFIRMED.*