**IKO INDUSTRIES LTD., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 95–161.**
**Court No. 91–06–00451.**

United States Court of
International Trade.

Sept. 19, 1995.

Fitch, King & Caffentzis, James Caffentzis, New York City, for plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States, Washington DC; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, John J. Mahon, New York City; Edward N. Maurer, Office of the Assistant Chief Counsel, United States Customs Service, Lido Beach, NY, of counsel, for defendant.

## OPINION

CARMAN, Judge:

Plaintiff commenced this action to challenge the United States Customs Service's (Customs) classification and liquidation of certain merchandise plaintiff imported from Canada during 1989 and 1990 through various ports of entry within the customs districts of Ogdensburg, New York and Great Falls, Montana. The Court designated this action a test case pursuant to U.S.CIT R. 84(b) and entered an order to that effect on February 22, 1993. The Court has jurisdiction under 28 U.S.C. § 1581(a) (1988) and, for the reasons which follow, enters judgment for plaintiff.

## BACKGROUND

There are two types of products at issue in this case: paper-based, asphalt roll roofing (roll roofing) and paper-based, asphalt shingles (shingles). There are three types of roll roofing involved in this case: smooth surface, mineral surface, and selvage. (Stipulation ¶ B.2.) There are ten varieties of the subject shingles: Aristocrat, AM Armour Seal 20, Chateau, New Englander, Total Seal, Armour Seal Supreme, Armour Lock, Economy Seal, Supreme, and Super Seal. (*Id.* ¶ B.5.) With the exception of Armour Lock, which is non-rectangular, and Chateau which is imported into the United States in 37.2 cm by 100 cm strips, all of the shingles are import-

ed into the United States in rectangular strips measuring 33.6 cm by 100 cm. (*Id.* ¶ B.6.) The shingles are imported in bundles of 21 or 22 shingles and each shingle, except for Chateau, New Englander, and Total Seal, is cut on one side, creating a tab effect. (*Id.* ¶¶ B.7, 8.) The shingles vary from each other by weight, shape, and color, with the differences in physical characteristics affecting the durability of the shingles. (*Id.* ¶ B.10.)

The roll roofing and shingles are part of a class of articles used in the United States as exterior covers for roofs to protect against damage from water or other environmental factors. (*Id.* ¶¶ B.4, 9, 18.) The shingles are generally "used on a sloping roof with a pitch greater than two inches per foot." (*Id.* ¶ B.19.) The roll roofing is principally used to cover horizontal or slightly sloped roof surfaces. (*Id.* ¶¶ B.4, 20.)

The roll roofing and shingles are manufactured by a continuous process. (*Id.* ¶ B.11.) The process commences by matting "fibers from recycled waste paper and wood chips, onto a single cylinder former." (*Id.*) After a felt blanket carries the mat from the cylinder, the mat is pressed to remove the water, and then dried by passing through a series of steam heated cylinders. (*Id.*) After this process, generally known as the "Fourdrinier" process, is complete, the resulting paper felt is transferred to the roofing plant. (*Id.*) At the roofing plant, the paper felt is "unwound on a dry looper and dipped into a [saturator] tank of hot liquid asphalt." (*Id.*) Once the product leaves the saturator tank, it "enters a wet looper which draws the asphalt from its surface into the felt to obtain a higher degree of saturation." (*Id.*)

To produce the various types of roll roofing, the paper felt is first coated on both sides with asphalt after the above process is complete. (*Id.* ¶ B.12.) The asphalt gives the product water-proofing capabilities. (*Id.* ¶ B.16.) Depending on the type of roll roof-

ing being produced, the surface that will be exposed to the elements and the other side of the coated paper felt is covered as follows:

| Roll Roofing Type | Exposed Side | Non-exposed Side |
| --- | --- | --- |
| smooth surface | sand | talc |
| mineral surface | mineral granules [1] | fine sand or talc |
| selvage | mineral granules | fine sand or talc [2] |

(*Id.* ¶ B.12(i)–(iii).) The substrate is the carrier for the asphalt and/or granules and acts as a reinforcement for the merchandise. (*Id.* ¶ B.17.) After the surfaces are covered with the various materials, the sheets move to a looper and winder to be cooled, cut, usually in widths of 91.5 cm and lengths of 11 meters. (*Id.* ¶ B.13.) The finished roll is then banded and packaged. (*Id.*)

Shingles are produced by coating the paper felt on both sides with asphalt, coating the exposed side with mineral granules and the non-exposed side with fine sand or talc. (*Id.* ¶¶ B.12, 12(ii), 14.) The sheet is then cut into the desired shapes, with small slits usually cut on one side of the shingle, and bundled. (*Id.* ¶ B.14.)

Customs classified plaintiff's roll roofing under subheading 6807.10.00, Harmonized Tariff Schedule of the United States (HTSUS), and the shingles under subheading 6807.90.00, HTSUS. Plaintiff filed a timely protest on April 18, 1991, to challenge Customs' classification. On May 1, 1991, Customs denied the protest and, after having paid all liquidated duties, plaintiff commenced this action. The parties subsequently filed a joint stipulation containing agreed facts and requested this action be submitted for decision on the stipulation in lieu of a trial. The Court accordingly treats this as a motion for summary judgment.

In a response brief submitted pursuant to the stipulation, however, defendant requested a remand to determine whether the classification of the roll roofing and shingles at issue in this case was affected by *Washington Int'l Ins. Co. v. United States*, 12 Fed.Cir. (T) ——, 24 F.3d 224, *aff'g* 16 CIT 873, 803 F.Supp. 420 (1992).[3] This Court ordered a

---

1. "Granules are used on the surface of roll roofing and shingles which will be exposed to the natural elements ... [to] [p]rotect underlying asphalt from the sun's rays [and to provide] additional fire resistance." (*Id.* ¶ B.15.)

2. The non-exposed half surface may or may not be coated with asphalt. (*Id.* ¶ B.12(iii).)

3. The Court in *Washington International Insurance* held the bitumen at issue was a "synthetic plastics material" within the meaning of the Tariff Schedules of the United States (TSUS).

remand on August 9, 1994. In its remand determination, Customs reaffirmed its classification of the merchandise under subheadings 6807.10.00 and 6807.90.00, HTSUS. This Court now considers the merits of this action.

### TARIFF PROVISIONS AND CHAPTER NOTE

*Classified Under:* [4]

6807 Articles of asphalt or of similar material (for example, petroleum bitumen or coal tar pitch):

6807.10.00 In rolls ...

6807.90.00 Other ...

*Claimed Under:*

4811 Paper, paperboard, cellulose wadding and webs of cellulose fibers, coated, impregnated, covered, surface-colored, surface-decorated or printed, in rolls or sheets, other than goods of heading 4803, 4809, 4810 or 4818:

4811.10.00 Tarred, bituminized or asphalted paper and paperboard ...

*Relevant Chapter Note:*

### CHAPTER 68

### ARTICLES OF STONE, PLASTER, CEMENT, ASBESTOS, MICA OR SIMILAR MATERIALS

*Notes*

1. This chapter does not cover:

\*    \*    \*    \*    \*    \*

(b) Coated, impregnated or covered paper of heading 4810 or 4811 (for example, paper coated with mica powder or graphite, bituminized or asphalted paper)[.]

*Washington Int'l Ins.,* 16 CIT at 877, 803 F.Supp. at 424. In its request for a remand, defendant argued a remand was appropriate for Customs to determine the impact of *Washington International Insurance,* and to determine if the merchandise in this case is a synthetic plastics material classifiable under subheading 3921.90.40, HTSUS.

### CONTENTIONS OF THE PARTIES

Plaintiff contends the roll roofing and shingles are paper products properly classifiable under subheading 4811.10.00, HTSUS. Plaintiff points to the language of HTSUS General Rule of Interpretation (GRI) 1 which indicates "classification shall be determined according to the terms of the headings and any relative section or chapter notes." Subheading 4811.10.00, plaintiff argues, encompasses a variety of asphalted papers traditionally recognized as classifiable by the composition of the base felt. Plaintiff reasons the merchandise at issue is manufactured by a conventional paper-making process and formed by paper machinery, rendering the goods paper or paper products. The asphalt and mineral granules, plaintiff argues, do not transform the paper products, but instead are mere components. Furthermore, plaintiff contends, the statutory notes to Chapter 48 and Chapter 68 require classification of the roll roofing and shingles in Chapter 48. In support of this argument, plaintiff points to HTSUS Chapter 68, Note 1(b) which states Chapter 68 "does not cover ... [c]oated, impregnated or covered paper of heading 4810 or 4811 (for example, paper coated with mica powder or graphite, bituminized or asphalted paper)[.]"

Plaintiff also contends defendant erroneously relied on the Customs Co–Operation Council's *Harmonized Commodity Description and Coding System Explanatory Notes (Explanatory Notes)* [5] to classify the merchandise at issue. Resort to the *Explanatory Notes* is not mandatory, and, in the instant case, plaintiff argues, the *Explanatory Notes* "conflict with the clear and unambiguous language of the statute." (Pl.'s Br. at 3–4.) Thus, plaintiff urges this Court not to allow defendant "to override the express language of the chapter notes and headings

---

4. All of the HTSUS provisions cited by the Court appear in HTSUS (1st ed. 1989 & 2d ed. 1990 & Supp. 1 & 2).

5. "The Explanatory Notes constitute the Customs Cooperation Council's official interpretation of the Harmonized System." H.R.Conf.Rep. No. 576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582.

mandating classification in Chapter 48." (*Id.* at 9.)

Defendant contends Customs properly classified the subject imports under subheadings 6807.10.00 and 6807.90.00, HTSUS. Defendant maintains that although the goods at issue appear to fit the descriptions of subheading 4811.10.00 as well as subheadings 6807.10.00 and 6807.90.00, a functional analysis reveals the goods have been so heavily coated or covered with asphalt and mineral granules that they are no longer coated paper. Instead, defendant argues, the goods are asphalt articles whose properties have been enhanced by a paper substrate, and, consequently, the paper component cannot determine classification.

Defendant further urges this Court to turn to the *Explanatory Notes*. Defendant points to the *Explanatory Notes* of Chapter 48 and argues the merchandise at issue does not compare to the exemplars listed, "nor are its coatings used for the same kinds of purposes indicated by the *Notes....* The coating is not for the purpose of giving the *paper* some special quality, the presence of the paper is to give the asphalt special qualities...." (Def.'s Br. at 16.) Defendant also points to the *Explanatory Notes* of Chapter 68, which state Heading 68.07 includes:

> Roofing boards consisting of a substrate (e.g., of paperboard, of web or fabric of glass fibre, of fabric of man-made fibre or jute, or of aluminum foil) completely enveloped in, or covered on both sides by, a layer of asphalt or similar material.

According to defendant, " 'roofing boards' refers to any kind of roofing material that satisfies the description contained in that *Note....* The *Note* makes clear that the paper is a substrate—a support—for an asphalt article." (Def.'s Br. at 17.) In sum, defendant argues, when one reads the *Explanatory Notes* to Chapters 48 and 68 together, if a coating or covering is applied to paper to provide a new paper surface to render it suitable for special requirements, the merchandise falls under 4810 or 4811, HTSUS. If, however, application of the layer renders the paper a support for a product of the coating material, the product is properly classifiable under 6807, HTSUS.

Finally, defendant calls the Court's attention to advertising literature provided by plaintiff. According to defendant, the literature focuses on the provision of protection from water and the elements and does not mention the paper or any special characteristic thereof.

Plaintiff maintains that contrary to defendant's contentions, reference in the *Explanatory Notes* to "coated paper" has no application to the subject paper products. To qualify as "coated paper," plaintiff argues, the coating material must create a layer on the surface of the paper, which may be more or less substantial depending upon the paper's use. If defendant's theory is accepted, plaintiff reasons, "immeasurable groups and subgroups of coated, covered or impregnated papers would be created. The statutory language, which clearly encompasses the asphalted coated papers in this case, would be supplanted by a test which is not recognized in commerce or industry." (Pl.'s Br. at 13.) Plaintiff also disputes defendant's contention that the subject goods are "roofing boards" as described in the *Explanatory Notes*.

STANDARD OF REVIEW

As in all customs classification cases, the government's classification decision is presumed to be correct. 28 U.S.C. § 2639(a)(1) (1988). This statutory presumption "governs all classification cases regardless of whether the Court conducts a trial or considers a motion for summary judgment." *Ugg Int'l, Inc. v. United States,* 17 CIT 79, 82, 813 F.Supp. 848, 851 (1993). To obtain judgment as a matter of law, plaintiff must overcome the statutory presumption of correctness attached to Customs' classification. *Id.* at 83, 813 F.Supp. at 852 (citation omitted). To determine whether an importer has overcome the statutory presumption, the Court "must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984).

## DISCUSSION

■ This case is before the Court on motion for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." U.S.CIT R. 56(d). "The Court will deny summary judgment if the parties present a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." *Ugg Int'l,* 17 CIT at 83, 813 F.Supp. at 852 (quotation marks and citation omitted).

■ The parties' stipulation defines the goods at issue. This case does not present any genuine issue of material fact. The two issues that remain are: (1) whether the paper-based asphalt roll roofing is an article of asphalt in rolls, as classified by Customs, or asphalted paper in rolls as claimed by plaintiff; and (2) whether the paper-based asphalt shingles are articles of asphalt, as classified by Customs, or asphalted paper in sheets, as claimed by plaintiff. Because these issues pertain solely to matters of statutory interpretation, specifically the proper meaning of the tariff provisions advanced by the parties, the Court concludes the parties' conflict raises questions of law which the Court may properly resolve by summary judgment. *Digital Equip. Corp. v. United States,* 8 Fed. Cir. (T) 5, 6, 889 F.2d 267, 268 (1989) (citation omitted).

■ Defendant has classified the roll roofing under subheading 6807.10.00, HTSUS, "Articles of asphalt or of similar material ... In rolls," and the shingles under subheading 6807.90.00, HTSUS, "Articles of asphalt or of similar material ... Other." At first glance, "articles of asphalt" may appear to encompass the roll roofing and shingles at issue. An "article" may be defined as "a material thing: item, object." *Webster's Third New International Dictionary* 123 (1986) (*Webster's*) (capitalization omitted).[6] The parties have stipulated that the paper felt is "dipped into a tank of hot liquid asphalt" and is subsequently put through a "wet looper which draws the asphalt from its surface into the felt to obtain a higher degree of saturation." (Stipulation at ¶ B.11.) The paper felt is also coated with asphalt. (*Id.* at ¶ B.12.)

Plaintiff contends, however, the merchandise is properly classified under subheading 4811.10.00, HTSUS which provides for classification of "asphalted paper and paperboard." The parties agree that the merchandise at issue is "paper-based."[7] The parties' stipulation describes how this base is then:

6. To determine the proper meaning of these tariff terms, the Court will construe the terms " 'in accordance with their common and popular meaning, in the absence of contrary legislative intent.' " *Marubeni Am. Corp. v. United States,* 12 Fed.Cir. (T) ——, ——, 35 F.3d 530, 534 (1994) (quoting *E.M. Chems. v. United States,* 9 Fed.Cir. (T) 33, 37, 920 F.2d 910, 913 (1990) (citations omitted)). " 'To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources.' " *Id.* (quoting *Brookside Veneers, Ltd. v. United States,* 6 Fed. Cir. (T) 121, 125, 847 F.2d 786, 789 (citation omitted), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988)).

7. In the stipulation, the parties refer to the merchandise at issue as "paper-based, asphalt roll roofing" and "paper-based, asphalt shingles." (Stipulation at ¶¶ A.1, 2.) The Court also notes defendant's statement to this Court that "there is no dispute that all of the imported merchandise consists of *paper products* which have been coated and impregnated with asphalt." (Def.'s Br. at 10 (emphasis added) (citing Pl.'s Br. at 4).)

The parties also refer in the stipulation to the paper component of the merchandise as "paper felt." Although the Court could not find a definition of "paper felt," one source defines "felt" as "[a] fibrous, watertight heavy paper of organic or asbestos fibers impregnated with asphalt and used as an overlining or an underlining for roofs. Also known as felt paper." *McGraw–Hill Dictionary of Scientific and Technical Terms* 594 (Sybil P. Parker, ed., 3rd ed. 1984) (*McGraw–Hill*). Another source defined "felt" as "[a] continuous belt generally made of wool but frequently of a combination of two or more of the following fibers: wool, cotton, asbestos, and synthetic fibers." American Paper Institute, Inc., *The Dictionary of Paper* 170 (4th ed. 1980). The same source defines "paper" as follows:

(1) (General term). The name for all kinds of matted or felted sheets of fiber ... formed on a fine screen from a water suspension.... (2) (Specific term).

One of the two broad subdivisions of paper (general term), the other being *Paperboard* [.]

transferred to the roofing plant where it is unwound on a dry looper and dipped into a tank of hot liquid asphalt. After leaving the saturator tank, the product enters a wet looper which draws the asphalt from its surface into the felt to obtain a higher degree of saturation.

(Stipulation at ¶ B.11.) The product is then coated with asphalt. (*Id.* at ¶¶ B.12, 14.)

General Rule of Interpretation 3, HTSUS, provides:

> When ... goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows:
>
> (a) The heading which provides the most specific description shall be preferred to headings providing a more general description....

*See Medline Indus., Inc. v. United States*, 62 F.3d 1407, 1409 n. 1 (Fed.Cir.1995) ("Because Heading 6302 of HTSUS provides the most specific provision for the imported [merchandise] and therefore prevails over Heading 6304 and Heading 6307 of HTSUS, we do not address whether the [merchandise] could be properly classified under either of these provisions."). Based on the parties' stipulated description of the merchandise at issue, the Court finds subheading 4811.10.00, HTSUS more specifically describes the merchandise.

Although the parties have not provided a definition of "asphalt*ed* paper," the Court did observe several definitions of "asphalt paper." *The Dictionary of Paper* defines "asphalt papers" as "[a] general term which includes papers saturated, coated, or laminated with asphalt or other bituminous material. See *Asphalt sheathing paper, Duplex asphalt paper, House sheathing paper, Roofing paper, Sheathing paper, Wrapping paper.*" *The Dictionary of Paper* at 23. *The Dictionary of Paper* defines "roofing paper" as:

> A general term used to designate any material used in waterproofing upper decks of buildings. There are several varieties. (1) *Prepared roofing:* felts saturated and coated with asphalt, plain or crushed slate or other grit, embedded in an asphalt-coated surface.... (3) *Roofing shingles:* prepared roofing cut into various sizes and styles of shingles.

*Id.* at 349.[8] Additionally, *Webster's* defines "asphalt paper" as "paper that is impregnat-

---

*Id.* at 296. The Court also notes that, in the stipulation, the parties refer to the first part of the merchandise's formation process as the "Fourdrinier" process. *The Dictionary of Paper* defines a "fourdrinier machine" as the machine "normally employed in the manufacture of all grades of paper and board." *Id.* at 190. Given all of the above, the Court finds part of the merchandise at issue may be considered "paper or paperboard." The Court does not, however, make a finding as to whether the material is either "paper" or "paperboard."

8. Defendant argues "other treatises define the term 'roofing papers' differently." (Def.'s Br. at 20.) In support of this argument, defendant quotes the following definition of "roofing papers":

> This is a class of paper used after saturating with tar or asphalt for cheap roofing and sometimes as an underliner in high grade roofing. An essential characteristic is saturating properties; that is, some strength and a high degree of porosity. Formerly cotton and wool rags were used exclusively for this, but, for a number of years, the supply has been inadequate and has been augmented with specially prepared wood pulp. In the preparation of this pulp, the wood is chipped, soaked in hot water, and ground in an attrition mill under steam pressure. This yields long fiber bundles which produce paper of good saturating prop-

erties. However, this wood pulp is generally used in admixture with the aforementioned rags.

Ralph W. Kumler, *Varieties of Paper and Paperboard, in Modern Pulp and Paper Making*, 35, 41 (John B. Calkin, ed., 3rd ed. 1957), *quoted in* Def.'s Br. at 20.

This definition of the term "roofing paper" does not undermine the Court's analysis. First, the key definition upon which the Court relies in this part of the analysis is "asphalt paper," not "roofing paper." The Court finds the definitions of "asphalt paper" described above as sufficiently broad to encompass the merchandise at issue. Simply because one treatise defines a subset of that general term differently from another does not mean the merchandise at issue does not fall into the general category. Additionally, as plaintiff correctly points out in its reply brief, the treatise which defendant cites also states:

> There are hundreds of grades of paper and paperboard of sufficiently distinctive characteristics to be given names. However, it is possible here to describe only the major classes. A complete list with definitions is found in "The Dictionary of Paper[]"....

*Id.* at 35, *quoted in* Pl.'s Reply Br. at 2. Second, treatise definitions are not the only basis for the Court's finding. As described above, the Court finds that subheading 4811.10.00, HTSUS, describes the merchandise at issue more specifical-

ed, coated, or laminated with asphalt." *Webster's* at 129; *see also McGraw–Hill* at 112 ("A paper that is coated or impregnated with asphalt."). The parties have stipulated that the merchandise is "coated" with asphalt. (*See* Stipulation at ¶¶ B.12, 14.) Furthermore, from the parties' description of the manufacture of the merchandise at issue, the merchandise also appears to be "impregnated" with asphalt. (*See id.*)[9]

As additional support for classification of the products under subheading 4811.10.00, HTSUS, the Court notes the nature of the advertising materials attached to the stipulation as Exhibit 7. These materials feature photographs of roofs covered with the subject merchandise in various shapes along with brief descriptions of and comments on the products. From these materials, it appears that the asphalt protects against fire and weather,[10] while the paper base acts as a necessary vehicle to create form and enable attachment to roofs. Generally one does not apply only asphalt to sloped roofs, nor does one apply a bare paper product. Instead, one applies roll roofing or shingles, which are composed of both asphalt and paper.[11] This conclusion is further evidenced by an examination of the products themselves.[12]

Finally, the Court notes that under HTSUS GRI 1, "classification shall be determined according to the terms of the headings and any relative section or chapter notes." Chapter Note 1(b) of Chapter 68 specifically excludes from Chapter 68 "[c]oated, impregnated or covered paper of heading 4810 or 4811 (for example, paper coated with mica

powder or graphite, bituminized or asphalted paper)." Thus, to be properly classifiable as an "article of asphalt," merchandise cannot be "[c]oated, impregnated or covered paper of heading ... 4811 (for example ... asphalted paper)." Based on the all of the above discussion, the Court finds the merchandise at issue is properly classifiable under 4811.10.00, HTSUS.

The Court disagrees with defendant's arguments concerning the merchandise's coating. Defendant argues the central question in this case is "whether the paper or paperboard substrate of the merchandise has been so heavily coated or covered with asphalt and mineral granules that the product is no longer a coated paper." (Def.'s Br. at 10.) Defendant takes the position that, at some point, "a surface treatment loses its character as a treatment of the surface of the material and becomes an article featuring the surfacing material. The substrate, in this case, the paper, becomes subsidiary, even if it still plays an important role in the use of the product." (*Id.* at 13.)

The parties have stipulated that the products are "coated." (*See* Stipulation at ¶¶ B.12, 13.) The Court does not agree, however, with defendant's contention that the products are so coated that subheadings 6807.90.00 and 6807.10.00, HTSUS providing for "articles of asphalt" describe the products more specifically than subheading 4811.10.00, HTSUS providing for "asphalted paper and paperboard." As discussed above, the Court has found that purchasers of the roll roofing and shingles are not purchasing mere as-

---

ly than subheadings 6807.10.00 and 6807.90.00, HTSUS, based on the parties' stipulated description of the merchandise and the manufacture of the merchandise.

**9.** According to the parties' stipulation:
 [T]he paper felt is ... transferred to the roofing plant where it is unwound on a dry looper and dipped into a tank of hot liquid asphalt. After leaving the saturator tank, the product enters a wet looper which draws the asphalt from its surface into the felt to obtain a higher degree of saturation.
 (Stipulation at ¶ B.11.) According to *Webster's,* one definition of "impregnate" is "to cause to be filled, imbued, mixed ... or saturated (as with particles of another substance)." *Webster's* at 1136. *The Dictionary of Paper* defines "impregnation" as "[t]he process of treating a sheet or web of paper or paperboard with a liquid. This

may be a molten material such as hot asphalt or wax." *The Dictionary of Paper* at 223.

**10.** According to the parties' stipulation, granules used on the surface of roll roofing and shingles which will be exposed to the natural elements "[p]rovide additional fire resistance" and "[p]rotect underlying asphalt from the sun's rays." (Stipulation at ¶ B.15.)

**11.** According to the stipulation, certain surfaces of the merchandise may also be coated or covered with mineral granules, sand, and/or talc. (*See* Stipulation at ¶¶ B.12, 14.)

**12.** Additionally, the Court notes the advertising materials do not refer to the merchandise merely as "asphalt," but as "asphalt shingles." (*See* Stipulation, Ex. 7.)

phalt, just as they are not purchasing mere paper products. Instead, customers purchase the subject merchandise "to cover exposed, horizontal," "sloped," "or slightly sloped surfaces of buildings and structures for protection against water damage or damage by other environmental factors." (Stipulation at ¶¶ B.4, 9.) The asphalt and mineral granule components ensure the products protect the surfaces of buildings and structures against "water damage or damage by other environmental factors." The paper component makes the products suitable to "cover exposed, horizontal," "sloped," "or slightly sloped surfaces of buildings and structures." Defendant's claim that the asphalt component may weigh more than the paper component is not persuasive to this Court.[13]

The Court also disagrees with defendant's reliance on the *Explanatory Notes* of Chapters 68 and 48. Defendant cites the *Explanatory Notes* of Chapter 68, which state Heading 68.07 includes:

> Roofing boards consisting of a substrate (e.g., of paperboard, of web or fabric of glass fibre, of fabric of man-made fibre or jute, or of aluminum foil) completely enveloped in, or covered on both sides by, a layer of asphalt or similar material.

Defendant also points to the *Explanatory Notes* of Chapter 48 and argues the merchandise at issue does not compare to the exemplars listed, "nor are its coatings used for the same kinds of purposes indicated by the *Notes*." (Def.'s Br. at 16.)

■ First, the Court notes that although *Explanatory Notes* may be instructive, they are not legally binding. *See, e.g., Marubeni Am.,* 12 Fed.Cir. (T) at ——, 35 F.3d at 535 n. 3 ("Explanatory Notes are only instructive and are not dispositive or binding.") (citation omitted). Second, the Court finds the *Explanatory Notes'* references to "roofing board" ambiguous in that the term "roofing board" appears to conflict with the rest of the language in that portion of the *Explanatory Notes.* The language in the *Explanatory Notes* "consisting of a substrate (e.g., of paperboard ...) completely enveloped in, or covered on both sides by, a layer of asphalt" appears to somewhat describe the products at issue. However, the term "roofing board" is not otherwise defined. The Court believes that, in order to be a "*roofing* board," a product must be stiff and rigid, appropriate to act as the roof itself, not some kind of covering for the roof.[14] This point is highlighted by the definition of "roofing nail" as defined in *McGraw–Hill:* "[a] nail used for attaching paper or shingle to roof boards." *McGraw–Hill* at 1392. One would not hammer or attach "paper or shingle" to the subject merchandise as if it were a roofing board because, as an examination of the merchandise reveals, it is too malleable. Instead, the subject merchandise itself is what would be hammered or attached to a roofing board.[15] Finally, the Court has examined the *Explanatory Notes* of Chapter 48 and finds those *Notes* and the exemplars listed broad enough to encompass the subject merchandise.

■ Although Customs' decisions enjoy a presumption of correctness, the Court's role in reviewing Customs cases *de novo* is to find the *correct* result. *See Semperit Indus. Prods., Inc. v. United States,* 18 CIT ——, ——, 855 F.Supp. 1292, 1299 (1994). Based on the above analysis, the Court finds plaintiff has overcome the statutory presumption of correctness and is entitled to judgment as a matter of law.

CONCLUSION

After considering all of plaintiff's and defendant's arguments, the Court finds plaintiff

---

**13.** The Court also notes defendant's discussion of *E. Dillingham, Inc. v. United States,* 15 CIT 223 1991 WL 94188 (1991), in its arguments concerning the subject merchandise's "coating." In *E. Dillingham,* the Court addressed the question of whether a treatment imparted by the manufacturer of various kinds of writing and printing paper rendered the papers "coated" under items 254.46 and 254.56, TSUS. *See E. Dillingham,* 15 CIT at 224. In the present case, no question exists that the merchandise is coated. (*See* Stipulation at ¶¶ B.12, 13.)

**14.** *Cf. Marubeni Am.,* 12 Fed.Cir. (T) at ——, 35 F.3d at 534 ("'To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used....'") (quoting *Brookside Veneers,* 6 Fed. Cir. (T) at 125, 847 F.2d at 789).

**15.** The Court notes the following language from the parties' stipulation: "The imported roll roofing and shingles are used as the exterior cover for a roof." (Stipulation at ¶ B.18.)

has overcome the presumption of correctness attached to Customs' classification of the subject merchandise under subheadings 6807.10.00 and 6807.90.00, HTSUS, and has demonstrated the merchandise is properly classifiable under subheading 4811.10.00, HTSUS. The Court will enter judgment for plaintiff.