**ARBOR FOODS INCORPORATED,**
**Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 95–69.**
**Court No. 93–08–00446.**

United States Court of
International Trade.

April 20, 1995.

Grunfeld, Desiderio, Lebowitz & Silverman, New York City (Robert B. Silverman, David M. Murphy), for plaintiff.

Frank W. Hunger, Asst. Atty. Gen.; Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Carla Garcia Benitez), of counsel; Robert J. Heilferty, Office of Chief Counsel for Intern. Trade, U.S. Dept. of Commerce, Karen P. Binder, Office of Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, Washington, DC, for defendant.

## OPINION

MUSGRAVE, Judge.

Plaintiff initiated this action to challenge defendant's refusal to admit sealed containers of sugar syrup into a Foreign Trade Zone. Plaintiff moves for summary judgment pursuant to Rule 56 of the Rules of the United States Court of International Trade. Defendant filed a cross-motion for summary judgment. The Court has jurisdiction under 28 U.S.C. § 1581(a) and, for the reasons which follow, enters judgment for defendant.

### Background

#### 1. *United States Sugar Program*

By Executive Proclamation 4941, the President imposed an *absolute quota* on the importation of raw and refined sugar. 47 Fed. Reg. 19,661 (May 7, 1982). To protect against circumvention of this quota, additional quotas were imposed on various imported products containing sugar under Executive Proclamations 5071 and 5294. 48 Fed.Reg. 30,089 (June 30, 1983); 50 Fed.Reg. 4187 (Jan. 30, 1985).

Sugar-blending operations were originally approved for Foreign Trade Zones ("FTZs") in 1983 after the United States Department of Agriculture ("USDA") advised the Foreign Trade Zones Board ("FTZB") that it would not oppose such operations. *See* U.S. General Accounting Office, *Sugar Program: Issues Related to Imports of Sugar–Containing Products,* Report No. GAO/RCED–88–146 (1988) at 6, *Defendant's Memorandum In Opposition To Plaintiff's Motion For Summary Judgment And In Support Of Defendant's Cross-motion For Summary Judgment ("Defendant's Motion"),* Exhibit 1. In August 1984, however, the USDA advised the FTZB that it believed that approval should be withdrawn for FTZ operations which blended sugar for U.S. importation because such operations interfered with the domestic

price support program. *Id.* The FTZB concluded, in consultation with the USDA, that existing activity in these zones did not constitute a significant volume, and thus, they were allowed to continue. The term "grandfathered" was used to describe this situation.[1] At that time, the FTZB set an annual limit for these companies on imports of sugar for domestic consumption. *Id.* Five "grandfathered" companies carried out sugar-blending operations during 1986, and only three are operating at this time. *Id.*

### 2. Arbor Foods Incorporated (Foreign Trade Zone Operation)

Arbor Foods Incorporated ("Arbor") is one of the sugar-blending operations that was allowed to use FTZ procedures in 1984. Arbor received authorization from the FTZB, with concurrence of the USDA, to conduct certain processing activity to blend ex-quota, foreign sugar under zone procedures.

In 1984, the USDA indicated to the FTZB that it's policy had changed and that it would not give its concurrence for any new proposals. Arbor was notified that it would be temporarily allowed to continue using FTZ procedures for the same activity, provided that Arbor's production did not exceed 1985 levels. This approval obviously contemplated production of the type previously engaged in by Arbor—up to 1985 levels. The FTZB communicated to Arbor that it might review ongoing FTZ activity at any time and, if there was a negative public interest finding, rescind the authority. Arbor had been made aware that any new activity or changes in activity would require further FTZB review. Affidavit of Clark D. Bien, Arbor's General Counsel, para. 5, attached to *Memorandum In Support Of Plaintiff's Motion For Summary Judgment ("Plaintiff's Motion").* Furthermore, Arbor acknowledged its awareness of the special restrictions which applied to the use of foreign source sugar in FTZs in its letter of October 14, 1986 to the FTZB. *Defendant's Motion,* Exhibit 3.

In response to the USDA's concerns, the FTZB expressed to the United States Customs Service ("Customs") its policy with respect to zone activity involving sugar in a letter dated December 30, 1985:

> *New sugar processing operations in zones require clearance from this office,* and our practice since late 1984, after receiving objections from the Agriculture Department, has been to invite public comments in the Federal Register on any proposals. Based on the position of Agriculture and the domestic industry, it would appear that approval of any new operation is not likely under present circumstances.

December 30, 1985 letter from FTZB to Customs, *Plaintiff's Motion,* Exhibit A (emphasis added). The FTZB went on to specifically address Arbor's zone activity:

> Arbor Foods is one of a few companies who had begun sugar blending operations under zone procedures prior to the adoption of this policy. Its established level is 38 million pounds per year, and *while it is being allowed to continue operations on a "grandfather" basis, each type of activity must be cleared with this office.*

*Id.* (emphasis added).

On May 30, 1986, Customs informed Arbor that each time a Customs Form "CF–216" was to be filed for a new product, the concurrence of the FTZB staff was necessary. May 30, 1986 letter from Port Director, Customs to Arbor, *Defendant's Motion,* Exhibit 2.

On October 14, 1986, Arbor did formally request authority to manufacture flavored syrups at its plant in FTZ # 8.[2] In support of its request, Arbor stated that:

> Arbor Foods' Canadian subsidiary, Arbor Dominion Limited, currently manufactures such products for the U.S. market in Windsor, Ontario. The effect of granting this authorization will not be to increase the flow of such goods into the U.S., but only to allow Arbor Foods to realize logis-

---

**1.** Since the "grandfathering" of these firms, USDA has consistently opposed the approval of applications for the establishment of new sugar operations. The FTZB, in consultation with USDA, has denied such applications. *See,* For-eign Agricultural Service, Sugar Import Notice (undated), *Defendant's Motion,* Exhibit 8.

**2.** FTZ # 8 is located at 3332 St. Lawrence Drive, Toledo, Ohio.

tical economies and to employ U.S. rather than Canadian workers.

October 14, 1986 letter from Arbor to FTZB, *Defendant's Motion*, Exhibit 3. Arbor's request to process syrups for the domestic market was not approved by the FTZB.

The USDA continued to express concerns regarding the effect of "grandfathered" zone operations on the sugar program. In a March 31, 1988 letter to the FTZB, the USDA stated:

since the "grandfathered" zone operations do not have to produce items which are subject to import quotas, this gives an appearance of arbitrariness on the part of U.S. Government treatment of companies in Foreign Trade Zones and Sub–Zones which are allowed to produce sugar-containing products for import purposes.

\* \* \* \* \* \*

[W]e believe it is clearly not in the public interest to allow a continuation of the current situation surrounding our treatment of companies in Foreign Trade Zones and Sub–Zones which are allowed to produce sugar-containing products for import.

March 31, 1988 letter from the USDA to the FTZB, *Defendant's Motion*, Exhibit 5.

On June 24, 1992, Arbor requested a binding tariff classification ruling from Customs for certain blended sugar syrups of Canadian origin which were subject to quota under the United States Sugar Program. Arbor intended to claim exemption from the quota because the blended sugar syrups would be stored in a FTZ. Arbor described the operation as follows:

The goods would be entered into the zone with non-privileged foreign status, and stored in either approx. 4000 gallon tank trailers or in approx. 55 gallon drums. The goods, without modification, would subsequently be entered for consumption into the U.S. from Arbor Foods' Toledo, Ohio FTZ facility.

\* \* \* \* \* \*

As such goods will be entered by Arbor Foods [into U.S. Customs territory] from zone operation, *Arbor Foods believes the goods should be classified under item no.*

*1702.90.5040 and, pursuant to Headnote 2(e) of Subchapter IV to Chapter 99 [of the Harmonized Tariff Schedule of the United States ("HTSUS")], excluding from the import restrictions of heading no. 9904.50.20 to the extent of the authorized annual quantity.*

June 24, 1992 letter from Arbor to the Regional Commissioner of Customs, New York Region, pp 1–2, Attachment to *Plaintiff's Motion*, Exhibit E (emphasis added).

Headnote 2(e) of Subchapter IV to Chapter 99 of the HTSUS creates an exemption to the absolute quota established for blended sugar syrups classifiable under heading 1702.90.50, HTSUS. This apparently unique provision exempts from the quota any blended sugar syrups entered from a FTZ by a FTZ user, whose facilities were in operation prior to June 1, 1990. Consequently, by seeking admission of the blended sugar syrups into FTZ # 8, Arbor essentially sought to avoid the established quota pursuant to the United States Sugar Program.

After conferring with the FTZB regarding Arbor's request, Customs responded that:

[ü]nder 19 U.S.C. 81o(c), the Foreign Trade Zones Board has authority to exclude an operation in a zone if it determines that the operation is not in the public interest. It is our understanding that the Foreign Trade Zones Board has concerns regarding the above proposed transaction. Consequently, you should contact the Board to determine whether or not the operation will be permitted.

H.Q. 952385 (December 9, 1992), *Plaintiff's Motion*, Exhibit F.

In addition, on February 16, 1993, the Executive Secretary of the FTZB provided Arbor with the following response:

I hereby reiterate the advice of my office and U.S. Customs that the 1990 legislation [authorizing limited use of foreign-sourced sugar in FTZs] does not limit the Board's authority to determine whether activity is in the public interest. *Formal FTZ Board approval would be needed before the zone use you propose could be conducted* because it differs from the kind of activity conducted prior to 1986 (dry blends of

drink and gelatin mixes), after which zone sugar activity was curtailed. If you wish to submit a formal application to use the zone for any other activity or quota product, please let us know.

February 16, 1993 letter from Executive Secretary, FTZB to Arbor, *Plaintiff's Motion,* Exhibit I (emphasis added).

On February 23, 1993, Arbor requested clarification of the FTZB's response:

Upon reading your letter, I would be very grateful for one clarification. I understand from your letter that Arbor Foods would have to obtain formal FTZ Board approval in order to manufacture or blend the syrups in question at the zone.

Your letter is not clear to me, however, on whether or not Arbor Foods would need formal Board approval in order to enter blended syrups into the zone in sealed containers and, without manipulation or manufacture, enter the sealed containers of syrup into U.S. commerce from the zone? Is this a "new activity" for which Arbor Foods would require formal FTZ approval?

In this connection, I note that Arbor Foods has, as recently as 1991, entered sugar containing quota products from Canada into the zone and subsequently entered them into the U.S. from the zone. As a result, Arbor Foods does not believe this to be "new" activity.

February 23, 1993 letter from Arbor to Executive Secretary, FTZB, *Plaintiff's Motion,* Exhibit J.

On March 2, 1993, the FTZB staff responded to Arbor and again reiterated that a request for authorization was necessary:

*FTZ Board approval would most certainly be needed in order for Arbor Foods to "enter blended syrups into the zone in sealed containers and, without manipulation or manufacture, enter the sealed containers of syrup into U.S. commerce from the zone."* It is the type of activity that on its face would raise serious "public interest" questions in light of the U.S. sugar program and the Board's decisions on sugar activity since the mid–1980's.

March 2, 1993 letter from Executive Secretary, FTZB, to Arbor, *Plaintiff's Motion,* Exhibit K (emphasis added).

On April 16, 1993, Arbor submitted an Application for FTZ Admission and/or Status Designation, Customs Form "CF–214," to Customs in Toledo, Ohio. The application sought the admission of a sealed container of blended sugar syrup into FTZ # 8. The application sought treatment of the merchandise as "non-privileged foreign" in accordance with Customs regulations. The application did not request approval of any manufacturing or processing operations. The purpose of the admission was the storage of blended sugar syrup in the FTZ prior to the filing of an entry to enter the merchandise into the commerce of the United States. Customs rejected Customs Form "CF–214" the same day stating "FTZ Board Approval is required."

Arbor protested the rejection on April 22, 1993. Customs denied the protest on May 24, 1993.

Arbor's principal claim against Customs is that Arbor has the right to enter blended sugar syrup in sealed containers into FTZ # 8 for storage (not manufacturing or processing) without prior approval of the FTZB. Specifically, Arbor argues that the Foreign Trade Zones Act of 1934, as amended, 19 U.S.C. § 81o(c) ("FTZ Act") and applicable regulations permit the admission of merchandise for storage (prior to entry in the commerce of the United States) unless: (1) the merchandise is prohibited by law, or (2) the FTZB, after review, has prohibited the merchandise from entry into the FTZ, or (3) other regulatory provisions prohibit or restrict the admission of the merchandise into the FTZ. Arbor argues that the blended sugar syrup is not prohibited by law. In addition, Arbor argues that no statute or regulation prohibits the admission of the subject merchandise into the FTZ. Finally, Arbor argues that the FTZB has not undertaken a review nor issued any order prohibiting the admission of the subject merchandise into the FTZ. In sum, Arbor argues that it "does not seek to expand any manufacturing or processing activity within the FTZ, but simply seeks to exercise its statutory privi-

lege"—the admission of blended sugar syrup into FTZ # 8.

Arbor also argues that its proposed storage of blended sugar syrups in FTZ # 8 may not be deemed "processing" under the FTZB's regulations. Essentially, Arbor argues that it's proposed activity does not fall within the FTZB's definition of the term "processing," as established in 15 C.F.R. § 400.2(*l*). Section 400.2(*l*) states that processing:

> when referring to zone activity, means any activity involving a change in condition or merchandise, other than manufacturing, which results in a change in the Customs classification of an article or in its eligibility for entry for consumption.

15 C.F.R. § 400.2(*l*). Arbor contends that its activity does not result in a "change in condition."

Customs responds that it denied admission for Arbor's blended sugar syrups given Arbor's failure to obtain the necessary authorization of the FTZB to bring into the FTZ merchandise which is subject to zero quota. Customs argues that its decision to deny admission is supported by its regulations, as well as the FTZB's broad statutory and regulatory authority to review FTZ activity, particularly when that activity is pursuant to conditional, "grandfathered" authority as in the case of Arbor.

### Discussion

■ This case is before the Court on cross-motions for summary judgment. Under the rules of this Court, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). The Court will deny summary judgment if the parties present "a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." *Ugg Int'l, Inc. v. United States*, 17 CIT ——, ——, 813 F.Supp. 848, 852 (1993) (quotation and citation omitted). "In assessing the parties' claims, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing summary judgment." *Id.*

This case does not present any genuine issue of material fact, certainly none of the facts are disputed, nor are there any claimed facts which would be enlarged upon or further explained by trial and cross-examination. The dispositive issues to be resolved are legal in nature. Because these issues are legal in nature, the Court concludes the parties' conflict raises questions of law which the Court may properly resolve by summary judgment.

The Court begins its review by examining the FTZB's statutory and regulatory authority to review zone activity. The FTZ Act grants the FTZB wide discretion to review zone activity. *See* 19 U.S.C. § 81a–81u (Supp.1993). As Customs points out in *Defendant's Motion*, in *Armco Steel Corp. v. Stans, et al.*, 431 F.2d 779, 788 (2d Cir.1970), *affirming*, 303 F.Supp. 262 (D.C.N.Y.1969), the reviewing court rejected a narrow interpretation of the FTZ Act, and stated

> Contrary to appellant's narrow view of the Foreign Trade Zones Act, *Congress has delegated a wide latitude of judgment to the Foreign–Trade Zones Board* to respond to and resolve the changing needs of domestic and foreign commerce through the trade zone concept.

Under 19 U.S.C. § 81o (c), the FTZB has the authority to restrict or condition activities to protect the "public interest." Correspondingly, the FTZB's implementing regulations require the FTZB to evaluate whether proposed FTZ activity is appropriate under given circumstances. These regulations permit the FTZB to condition, audit, or prohibit such FTZ activity as necessary. 15 C.F.R. § 400 *et seq.*

Furthermore, pursuant to 15 C.F.R. § 400.31(b), the FTZB is directed to evaluate certain criteria in reviewing FTZ activity:

> It is the policy of the Board to authorize zone activity only when it is consistent with public policy and, in regard to activity involving foreign merchandise subject to quotas or inverted tariffs, when zone procedures are not the sole determining cause of imports. Thus, without undertaking a

review of the economic factors enumerated in § 400.31(b)(2), the Board shall deny or restrict authority for proposed or ongoing activity if it determines that:

(i) *The activity is inconsistent with U.S. trade and tariff law, or policy which has been formally adopted by the Executive branch;*

\*　\*　\*　\*　\*　\*

(iii) *The activity involves items subject to quantitative import controls or inverted tariffs, and the use of zone procedures would be the direct and sole cause of imports that, but for such procedures, would not likely otherwise have occurred, taking into account both imports as individual items and as components of imported products.*

15 C.F.R. § 400.31(b)(1) (emphasis added). If the FTZB finds that the FTZ activity is no longer in the "public interest," the regulations allow the FTZB to place restrictions on approved FTZ activity. Under 15 C.F.R. § 400.31(d), continuing FTZ activity

*may be reviewed at any time* to determine whether it is in compliance with the Act and regulations as well as the authority granted by the Board. Reviews may also be conducted to determine whether there are changed circumstances that raise questions as to whether the activity is detrimental to the public interest, taking into account the factors enumerated in § 400.31.

15 C.F.R. § 400.31(d) (emphasis added).

Lastly, the FTZB, Commerce Department's Assistant Secretary for Import Administration, or Executive Secretary of the FTZB, may initiate a review of FTZ activity. 15 C.F.R. § 400.31(d)(2). Upon review, the FTZB may restrict the FTZ activity in question if it determines that the activity is no longer in the "public interest." 15 C.F.R. § 400.31(d)(3).

■ While the undisputed facts establish that Arbor was allowed by the FTZB to continue to operate within the FTZ on a "grandfather" basis, the Court notes that there is no *express provision* in the FTZ regulations on "grandfathered" activity. As stated above, the FTZ regulations provide

that FTZ users are directed to seek FTZB approval *before undertaking new activities not within their scope of authority.* This is especially relevant in this case, since the FTZ activity proposed by Arbor involves merchandise which is subject to quota restrictions under the United States Sugar Program. While there is no specific anti-circumvention statute, or regulation, in effect to cover this situation, it would seem egregiously unfair, in sensitive policy areas such as this, to allow FTZ users to operate freely without formal review by the FTZB of such related activity. Furthermore, it is simply not believable that Headnote 2(e) of Subchapter IV to Chapter 99 of the HTSUS was intended to create an absolute loophole through which unlimited quantities of quota merchandise could be converted into non-quota merchandise by resting for a day or so in a FTZ.

It is clear from the documents submitted and relied upon by both Customs and Arbor, that Arbor was explicitly apprised that the FTZ activity it sought, *required authorization* from the FTZB. Despite the fact that Arbor was forewarned that such authorization was needed, Arbor failed to seek the administrative procedure as required by FTZB. Arbor's failure to do so provided Customs with a reasonable basis to deny the admission of the merchandise into FTZ # 8.

Arbor plainly sought to avoid current limitations on sugar imports by seeking admission of the blended sugar syrup into FTZ # 8 and then transferring the merchandise into the commerce of the United States. Arbor should not be able to jeopardize the "public interest" mandate incorporated into the FTZ Act by operating freely in the FTZ and circumventing United States trade and tariff policy, in particular, the United States Sugar Program.

■ Even assuming *arguendo,* that Arbor's proposed FTZ activity does not neatly fall within the regulatory definition of "processing," Arbor should nevertheless be required to submit this matter for the FTZB's review. The sensitive policy concerns surrounding the United States Sugar Program along with the FTZB's broad authority ne-

cessitates the FTZB to review *all FTZ activity* whether it falls within the strict definition of "processing" or not. By seeking to avoid the FTZB's review, Arbor prevents the FTZB from apprising the potential adverse impact that Arbor's proposed FTZ activity might have on domestic producers. In any event, it is evident from the circumstances of this case, that Arbor's FTZ activity is a privilege, and not a statutory right.

The Court finds that Customs properly exercised its authority to deny the admission of the blended sugar syrup by Arbor into FTZ #8. As discussed above, the FTZB had conveyed to Customs its policy with respect to FTZ activity involving the importation of foreign sugar. Customs was placed on notice that the "grandfathered" sugar blending operations in FTZs necessitated careful supervision, and was apprised of the unique status of Arbor's FTZ activity. Finally, Customs was fully aware that FTZ activity by Arbor required clearance by the FTZB. In sum, Customs had adequate grounds upon which to require Arbor to seek the FTZB's authorization prior to allowing the admission of the subject merchandise into FTZ #8.

*Conclusion*

For the foregoing reasons, the Court denies plaintiff's motion for summary judgment. Defendant's cross-motion for summary judgment is granted.

**JUDGMENT**

This case having been duly submitted for decision, and the Court after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

**ORDERED** that plaintiff's motion for summary judgment is denied; and it is further

**ORDERED** that defendant's cross-motion for summary judgment is granted, and it is further,

**ORDERED** that this action is dismissed.

