**ARBOR FOODS INCORPORATED,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–**
**Appellee.**

**No. 95–1405.**

United States Court of Appeals,
Federal Circuit.

Sept. 30, 1996.

Robert B. Silverman, Grunfeld, Desiderio, Lebowitz & Silverman LLP, New York City, argued, for plaintiff-appellant. With him on the brief, was David M. Murphy.

Barbara Silver Williams, Attorney, Civil Division, Commercial Litigation Branch, Department of Justice, International Trade Field Office, New York City, argued, for defendant-appellee. With her on the brief, were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Washington, DC, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief were Robert J. Heilferty, Attorney–Advisor, Office of the Chief Counsel for International Trade, U.S. Department of Commerce, and Karen P. Binder, (Acting) Deputy Assistant Chief Counsel, Office of Assistant Chief Counsel,

International Trade Litigation, U.S. Customs Service.

Before LOURIE, Circuit Judge, SKELTON, Senior Circuit Judge, and SCHALL, Circuit Judge.

SCHALL, Circuit Judge.

Arbor Foods Incorporated ("Arbor") appeals the April 20, 1995 decision of the United States Court of International Trade in Docket No. 93–08–0046, 885 F.Supp. 281. In its decision, the court granted summary judgment for the United States Customs Service ("Customs") in Arbor's suit against Customs challenging Customs' refusal to admit sealed containers of sugar syrup into a foreign-trade zone ("FTZ"). We affirm.

## BACKGROUND

This case involves sugar syrup and FTZs. In 1982, President Reagan issued an executive proclamation that imposed a quota on the importation of raw and refined sugar. Proclamation No. 4941, 47 Fed.Reg. 19661 (1982). In 1983 and 1985, additional quotas were imposed upon various imported products that contained sugar. Proclamation No. 5071, 48 Fed.Reg. 30089 (1983); Proclamation No. 5294, 50 Fed.Reg. 4187 (1985).

FTZs are areas given advantageous treatment under the customs laws in order to expedite and encourage foreign commerce. *See* 19 U.S.C. §§ 81a–81u (1994); 19 C.F.R. §§ 146.0–146.96 (1996). They are located in or adjacent to ports of entry in the United States. Merchandise generally may be brought into a FTZ and manipulated and manufactured without being subject to the customs laws of the United States. *See Citgo Petroleum Corp. v. United States Foreign–Trade Zones Bd.,* 83 F.3d 397, 400 (Fed. Cir.1996); *Goodman Mfg., L.P. v. United States,* 69 F.3d 505, 506 (Fed.Cir.1995); *see also* 19 U.S.C. § 81c.

> For example, a company that ships raw materials into a foreign-trade zone, processes the raw materials into finished products, and then exports the finished products is not required to pay duties on the raw materials, as they are deemed never to have entered the customs territo-

ry of the United States. Similarly, a company that ships raw materials into the zone, manufactures finished products in the zone, and imports those products into the United States may be eligible to pay duties on the finished products rather than the (often higher) duties that would otherwise be assessed on the raw materials.

*Citgo,* 83 F.3d at 399.

In 1992, Arbor sought to enter drums and tank trailers of blended sugar syrup from Canada into FTZ No. 8 in Toledo, Ohio. Arbor believed that, under the statutes and regulations governing FTZs, its sugar syrup should be allowed entry into FTZ No. 8 and should therefore be exempt from quota restraints. Accordingly, on June 24, 1992, Arbor requested a binding ruling from Customs regarding the classification and quota treatment of the sugar syrup. Arbor's request stated that the syrup would be stored in the zone and then entered without modification into the United States for consumption.

Customs declined to issue the requested ruling. Instead, on December 9, 1992, Customs responded by letter: "It is our understanding that the Foreign–Trade Zones Board [ ("FTZB" or "Board") ] has concerns regarding the above proposed transaction. Consequently, you should contact the Board to determine whether or not the operation will be permitted." The FTZB is charged by statute with governing FTZs. *See* 19 U.S.C. § 81a(b); 15 C.F.R. §§ *400.1–400.53 (1996). The FTZB "consists of the Secretary of the Department of Commerce (chairman), the Secretary of the Treasury, and the Secretary of the Army, or their designated alternates." 15 C.F.R. § 400.2(b).

Arbor contacted the FTZB and explained its intention to enter sugar syrup into FTZ No. 8. On February 16, 1993, a FTZB official responded by letter that "[f]ormal FTZ Board approval would be needed before the zone use you propose could be conducted.... If you wish to submit a formal application to use the zone ..., please let me know. I must advise you, however, that based on past decisions, the FTZ would likely deny authority because of the adverse effect on the sugar quota programs."

On February 23, 1993, Arbor requested clarification of the February 16 letter. On March 2, 1993, the FTZB responded that:

FTZ Board approval would ... be needed in order for Arbor Foods to "enter blended syrups into the zone in sealed containers and, without manipulation or manufacture, enter the sealed containers of syrup into U.S. commerce from the zone." It is a type of activity that on its face would raise serious 'public interest' questions in light of the U.S. sugar program and the Board's decisions on sugar activity since the mid–1980's.

On April 16, 1993, Arbor submitted to Customs a properly executed "Application for Foreign Trade Zone Admission and/or Status Designation" requesting admission of its sugar syrup and "nonprivileged foreign" status. That same day, Customs, stating that "FTZ Board [a]pproval is required," rejected Arbor's application and refused to allow Arbor's sugar syrup to enter FTZ No. 8. A week later, Arbor filed a protest of the rejection with Customs, which Customs denied on May 24, 1993.

Arbor brought suit against Customs in the Court of International Trade, alleging that Customs' denial of its protest, and Customs' consequent refusal to allow entry of Arbor's sugar syrup into FTZ No. 8, was unlawful.[1] The parties filed cross motions for summary judgment and the court granted Customs' motion. The court held that Customs acted lawfully in requiring Arbor to seek FTZB authorization before Customs admitted Arbor's sugar syrup, and that Customs properly denied admission of the sugar syrup into FTZ No. 8. This appeal followed.

## DISCUSSION

### I.

■ As a preliminary matter, the government argues that we should dismiss this appeal because Arbor failed to exhaust administrative remedies before filing suit in the Court of International Trade, as required by 28 U.S.C. § 2637 (1994). The government appears to make this argument based upon either part (a) or (d) of section 2637, which, respectively, in pertinent part provide as follows:

(a) A civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930 may be commenced in the Court of International Trade only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced, . . . .

. . .

(d) In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.

The government asserts that the agency involved in this case is the FTZB, and because the FTZB has not rendered a final decision in Arbor's case, the Court of International Trade should have dismissed the action for failure to exhaust administrative remedies. Arbor responds that the only decision at issue in this case is *Customs'* decision to refuse admission of Arbor's merchandise and that Customs' decision in this regard was final. Accordingly, it has exhausted its administrative remedies.

We reject the government's exhaustion argument. Arbor is seeking review of Customs' decision to require FTZB approval of Arbor's proposed entry of sugar syrup into FTZ No. 8. Arbor is not seeking review of any decision of the FTZB. There is no dispute that Customs' decision requiring FTZB approval was final. Moreover, insofar as 28 U.S.C. § 2637(a) is concerned, Customs does not argue that there were any liquidated duties, charges, or exactions owed by Arbor in relation to this protest at the time

---

1. The Court of International Trade found that it had jurisdiction over Arbor's case under 28 U.S.C. § 1581(a) (1994), which provides the court with "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 [, 19 U.S.C. § 1515]." The court possesses "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585 (1994). Section 2643 of title 28 specifically provides that the Court of International Trade may enter various forms of relief, including money judgments, declaratory judgments, and injunctions. 28 U.S.C. § 2643 (1994).

this action was commenced. Thus, the agency involved—Customs, not the FTZB—has rendered a final decision in Arbor's case, and Arbor has exhausted its administrative remedies before Customs.

## II.

We review the Court of International Trade's grant of summary judgment *de novo*. *Norfolk & Western Ry. v. United States*, 62 F.3d 1395, 1396 (Fed.Cir.1995). Under Rule 56(d) of the Rules of the United States Court of International Trade, summary judgment for the moving party is proper only if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Here, as the parties recognize, there is no genuine issue as to any material fact. Therefore, the case is "purely one of statutory interpretation over which we exercise our own independent judgment without deference to the trial court." *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed.Cir.1989).

## III.

Turning to the merits, Arbor argues that 19 U.S.C. § 81c(a) and regulations promulgated pursuant to section 81c require Customs to admit Arbor's sugar syrup into FTZ No. 8 for storage. Section 81c(a) provides in pertinent part as follows:

> Foreign and domestic merchandise of every description, except such as is prohibited by law, may, without being subject to the customs laws of the United States, except as otherwise provided in this chapter, be brought into a zone and may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise or otherwise manipulated, or be manufactured except as otherwise provided in this chapter, and be ... sent into customs territory of the United States therefrom ...; but when foreign merchandise is so sent from a zone into customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise....

Arbor contends that section 81c(a) creates a statutory privilege to admit non-prohibited merchandise into a FTZ for storage. Arbor further contends that section 81c(a) places no restrictions or pre-approval conditions on the exercise of this privilege. The government, on the other hand, states that Customs properly interpreted section 81c(a) as allowing Customs to require FTZB approval before admitting Arbor's sugar syrup into FTZ No. 8. While the government recognizes that section 81c(a) provides a statutory privilege, it asserts that the contours of the privilege must be defined in the context of the statutory scheme governing FTZs and the FTZB.

When evaluating Customs' interpretation of a statute which it is charged with administering, we are guided by the Supreme Court's decision in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("*Chevron*"). See *Torrington Co. v. United States*, 82 F.3d 1039, 1044 (Fed.Cir. 1996). *Chevron* sets forth a two-step test to be used in evaluating the lawfulness of an agency's approach. The first question in the *Chevron* analysis is "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781.

If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782 (footnote omitted). Any reasonable construction of the statute is a permissible construction. "[A]n agency's construction need not be the only reasonable interpretation or even the most reasonable interpretation. Rather, a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another." *Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1570 (Fed.Cir.1994) (citing *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978)). The court will defer to the

agency's construction of the statute as a permissible construction if it "reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' express intent." *Rust v. Sullivan,* 500 U.S. 173, 184, 111 S.Ct. 1759, 1767–68, 114 L.Ed.2d 233 (1991); *see also Torrington,* 82 F.3d at 1044.

The "precise question" at issue in this case is whether Customs may require a party seeking to enter merchandise into a FTZ for storage to obtain approval from the FTZB before the merchandise is admitted. Neither party points us to where Congress has "directly spoken" to this question. Although there are statutes that govern the establishment of FTZs, 19 U.S.C. § 81b, that require the FTZB to cooperate with Customs and other agencies, 19 U.S.C. § 81i, and that empower the FTZB to exclude certain goods from a FTZ, 19 U.S.C. § 81o(c), we have found none that directly speak to this question. Thus, we will examine Customs' interpretation of section 81c(a) to see if it is plausible.

■ As both parties recognize, section 81c(a) provides that certain merchandise may be entered and stored in a FTZ without being subject to the customs laws. However, the plain language of section 81c(a) qualifies this grant of permission by allowing entry and storage of such merchandise "except as otherwise provided in this chapter [of the United States Code]." In that regard, the government points to 19 U.S.C. § 81o(c), which is in the same chapter of the United States Code as section 81c(a). Section 81o(c) provides in pertinent part that the FTZB "may at any time order the exclusion from the zone of any goods ... that in its judgment [are] detrimental to the public interest, health, or safety." In light of the FTZB's power to exclude goods conferred by section 81o(c), the government reads section 81c(a) as allowing Customs to require that an importer obtain the FTZB's approval before entering merchandise into a FTZ.

Customs' determination that it could require Arbor to obtain approval from the FTZB before it admitted Arbor's sugar syrup into FTZ No. 8 represents a plausible construction of the statutory scheme. As just seen, section 81c(a) expressly qualifies the privilege of entering merchandise into a FTZ by referring to all of the statutes in section 81c's chapter of the United States Code, including section 81o. The plain language of section 81o(c) indicates that Congress intended to confer broad, discretionary powers on the FTZB to exclude goods from FTZs. *See Citgo,* 83 F.3d at 400 ("Congress granted the Foreign–Trade Zones Board very broad regulatory authority over foreign-trade zones and subzones."). We believe that it was manifestly reasonable for Customs to conclude that Congress' grant of broad powers to the FTZB meant that Customs, as gatekeeper at the border, could require Arbor to obtain FTZB permission before Arbor's sugar syrup was admitted into FTZ No. 8. In short, because Customs' interpretation of the statutory scheme is plausible, we will uphold it.

## IV.

Customs has promulgated regulations that govern entry of merchandise into FTZs. One of these regulations, 19 C.F.R. § 146.32(a) (1993), provides that, subject to some exceptions not at issue here, "[m]erchandise may be admitted into a zone only upon application on a ... 'Application for Foreign Trade Zone Admission and/or Status Designation' ... and the issuance of a permit by the district director." As noted above, Arbor submitted such an application.

Section 146.32(c) of 19 C.F.R., governing conditions for issuance of the permit by Customs, provides as follows:

The district director will issue a permit for admission of merchandise to a zone when:

(1) The application is properly executed and includes the zone status desired for the merchandise, as provided in Subpart D of this part;

(2) The operator's approval appears either on the application or in a separate specific or blanket approval;

(3) The merchandise is retained for examination at the place of unlading, the zone, or other location designated by the district director, except for merchandise

for direct delivery to a zone under §§ 146.39 and 146.40. The merchandise may be examined as if it were to be entered for consumption or warehouse; and

(4) All requirements have been fulfilled.

19 C.F.R. § 146.32(c) (1993).

Arbor asserts that it met all four of section 146.32(c)'s conditions, and that the regulation's "will" language made it mandatory that Customs allow Arbor's sugar syrup to enter FTZ No. 8 upon Arbor's having met those conditions. Consequently, Arbor claims that Customs violated section 146.32(c) when it stated that FTZB approval was necessary before Arbor's merchandise could enter the zone. For its part, the government does not dispute that Arbor met the first three requirements of the regulation. Rather, it contends that Customs properly interpreted the term "requirements" in section 146.32(c)(4) as including FTZB approval if Customs required such approval. Thus, the government states that because Arbor did not obtain FTZB approval, as required by Customs, "all requirements" were not "fulfilled," and Arbor thus did not satisfy the conditions of section 146.32(c)(4).

■ An agency's interpretation of its own regulation will be upheld " 'unless it is plainly erroneous or inconsistent with the regulation.' " *Immigration & Naturalization Serv. v. Stanisic*, 395 U.S. 62, 71, 89 S.Ct. 1519, 1526, 23 L.Ed.2d 101 (1969) (citation omitted); *see also Torrington*, 82 F.3d at 1050. As discussed above, it was reasonable for Customs to construe 19 U.S.C. § 81c(a) as allowing Customs to require that Arbor obtain the FTZB's approval before admitting the sugar syrup into FTZ No. 8. Customs' interpretation of section 146.32(c)(4) is consistent with this reasonable construction of section 81c(a). In addition, by its plain language, section 146.32(c)(4) is not limited to any specified requirements. Thus, no plain error or inconsistency being apparent, we uphold Customs' interpretation of section 146.32(c)(4) as allowing Customs to require FTZB approval before Customs allowed entry of Arbor's sugar syrup into FTZ No. 8.

## V.

Arbor also argues that 15 C.F.R. § 400.43 (1993) requires Customs to allow entry of merchandise unless and until the FTZB has excluded the merchandise in a "formal decision" after notice and review. Entitled "Restriction and prohibition of certain zone operations," section 400.43 provides as follows:

(a) In general. After review, the Board may restrict or prohibit any admission of merchandise into a zone project or operation in a zone project when it determines that such activity is detrimental to the public interest, health or safety.

(b) Initiation of review. The Board may conduct a proceeding, or the Executive Secretary a review, to consider a restriction or prohibition under paragraph (a) of this section either self-initiated, or in response to a complaint made to the Board by a party directly affected by the activity in question and showing good cause.

Arbor contends that section 400.43 requires the FTZB to publish notice and complete a review prior to restricting the admission of merchandise into a FTZ. Arbor argues that because no such notice and review was completed before Customs denied entry of the sugar syrup, Customs acted unlawfully in denying entry. The government responds that section 400.43 does not condition *Customs'* exclusion of merchandise upon the completion of FTZB review, and that the regulation governs only the FTZB's limitation of admission after review. We agree.

■ We find that Customs' interpretation of section 400.43 is not plainly erroneous or inconsistent with the regulation. On its face, section 400.43 governs the FTZB's actions, and not Customs'. Although the Secretary of Commerce is the chair of the FTZB, and Customs and the FTZB work closely together on FTZ matters, the FTZB and Customs are separate entities. Assuming *arguendo* that section 400.43 requires the FTZB to publish notice and complete a review prior to restricting the admission of merchandise into a FTZ, the regulation places no requirements on Customs' activities. For this reason, we

hold that Customs did not violate section 400.43.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of International Trade.

COSTS

Each party shall bear its own costs.

*AFFIRMED.*